UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

SHANTI GURUNG,

          Plaintiff,

      v.

JOGESH MALHOTRA and NEENA MALHOTRA

         Defendants.

------------------------------------x

Case No.

**COMPLAINT**

Plaintiff Shanti Gurung ("Ms. Gurung" or "Plaintiff"), by its undersigned attorneys, for its complaint against Defendants Jogesh Malhotra and Neena Malhotra, alleges as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff Shanti Gurung, a domestic worker, was essentially kidnapped in her native India at the age of seventeen and trafficked to the United States where she was held in involuntary servitude for over three years by the Defendants. The Defendants effectively imprisoned Ms. Gurung and subjected her to involuntary servitude for extreme hours and no pay, all in violation of federal and New York law.

2.    After luring Ms. Gurung to the United States with false promises, and tricking United States immigration authorities to admit her, the defendants held her in slavery and peonage. During a 40-month period, the Defendants forced Ms. Gurung to work for a one-time payment of 5,500 Indian rupees (approximately US$120). The Defendants held Ms. Gurung as a virtual prisoner in their residence, stripping her of her passport, refusing to permit her to leave the house aside from grocery shopping for Defendants, and forcing her to wait upon the Defendants' frequent house guests and to serve at multiple parties per month in their home.

3.     The Defendants trafficked Ms. Gurung into the United States under false pretenses, including the promise of specified wages and good working conditions.  Instead, the Defendants required her to work approximately sixteen hours per day without pay, while subjecting her to severe psychological abuse, the threat of physical harm, abuse by law enforcement, and deportation.

4.     The trafficking of human beings is so serious and wide-spread that the United States Secretary of State now issues a yearly "Trafficking in Persons Report" to Congress in order to provide "a global look at the nature and scope of trafficking in persons and the broad range of government actions to confront and eliminate it."  In her 2009 report, Secretary of State Clinton wrote

> Human trafficking is a multi-dimensional issue.  It is a crime that deprives people of their human rights and freedoms, increases global health risks, fuels growing networks of organized crime, and can sustain levels of poverty and impede development in certain areas.  The impacts of human trafficking are devastating. Victims may suffer physical and emotional abuse, rape, threats against self and family, and even death.  But the devastation also extends beyond individual victims; human trafficking undermines the health, safety, and security of all nations it touches.[1]

5.     Ms. Gurung seeks compensatory and punitive damages and restitution, including attorneys' fees and costs where applicable.

## THE PARTIES, JURISDICTION, AND VENUE

6.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1351 and 29 U.S.C. § 216(b).  This Court has supplemental jurisdiction over Ms. Gurung's state law claims pursuant to 28 U.S.C. § 1367.

---

[1]     U.S. Dep't of State, Trafficking in Persons Report at 5, http://www.state.gov/documents/organization/123357.pdf (June 2009).

7.      Plaintiff is a 21 year old citizen of India, born in October 1988.  At the time of the events that give rise to this Complaint, Ms. Gurung was residing in the United States by virtue of an A-3 Employment Visa.  Ms. Gurung worked for the Defendants in their residence at 235 East 43rd Street, Apartment 10, New York, New York from approximately March of 2006 until approximately July of 2009.  Her ability to speak and understand English was severely limited prior to and during the time she was held and forced to work in the Defendants' home.

8.      At all times relevant to this action, Defendant Ms. Neena Malhotra was the Counselor of Press, Culture, Information, Education, and Community Affairs at the Consulate General of India in Manhattan.  Ms. Malhotra resided at 235 East 43rd Street, Apartment 10, New York, New York, which is owned by the Permanent Mission of India to the United Nations.  On information and belief, the residents of that building are mostly diplomatic and consular officials of India to the United States.

9.      Upon information and belief, from approximately June 2006 until approximately July of 2009, Defendant Jogesh Malhotra, husband of Defendant Ms. Malhotra, was employed as an engineer.  He conducted his business from his shared residence with Defendant Ms. Malhotra.

10.     Defendants are citizens of India.

11.     Defendant Ms. Malhotra currently serves as the Director of the Southern Division, for the Ministry of External Affairs of India in New Delhi.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because events giving rise to this action occurred within this District.

3

## FACTUAL BACKGROUND

**A.    Recruitment into Forced Labor**

13.    Ms. Gurung, whose highest level of education is the eighth grade, was only 17 years old when she met the Defendants. She had never been employed by someone as a domestic worker before her employment with the Defendants.

14.    Defendants promised Ms. Gurung that, in exchange for light cooking, light cleaning, and staffing the occasional house party for a period of three years in the United States, they would pay her 5,000 rupees (approximately US$108) a month, with raises every six months. Ms. Gurung had no way to know that even this promised sum would be well below the minimum wage in New York City, or that the Defendants were in any event lying to her.

15.    Defendants asked Ms. Gurung to sign some paperwork before leaving India but Defendants did not explain the content of the paperwork and did not provide a copy to Ms. Gurung. The paperwork was written in English, which Ms. Gurung could not read or understand. Ms. Gurung had no prior experience making, signing, or reviewing contracts.

16.    The Defendants made all arrangements to bring Ms. Gurung to the United States, including obtaining both her passport and A-3 visa, securing her official identification from the Consulate of India, and purchasing her plane ticket to fly from New Delhi to New York City.

17.    In order to secure her A-3 visa, Defendants instructed Ms. Gurung to tell the U.S. Embassy that Defendants would pay her US$7 an hour. Defendants also asked Ms. Gurung to lie about her birth date, so that she would appear to United States officials to be eighteen, not her actual age of seventeen. In fear of losing her employment, Ms. Gurung complied with the Defendants' demands.

**B.     Forced Labor and Exploitation of Ms. Gurung in the United States**

18.     In approximately March 2006, Ms. Malhotra brought Ms. Gurung to her home in New York.  As soon as Ms. Gurung arrived at Ms. Malhotra's home, she required Ms. Gurung to perform substantially more duties than had been represented at the time of recruitment.

19.     In addition to doing more cooking and cleaning than the Defendants had represented, Ms. Gurung was required to perform daily massages for Ms. Malhotra, wash the laundry, and run chores, such as grocery shopping.

20.     Prior to Mr. Malhotra's arrival in approximately June 2006, Ms. Gurung worked approximately twelve hours a day, seven days a week.

21.     After Mr. Malhotra's arrival, Ms. Gurung's working and living conditions deteriorated even further.  Ms. Gurung was forced to work approximately sixteen hour days, seven days a week.  Additionally, the Defendants moved her from a small private room and forced her to sleep on the living room floor even though there were empty bedrooms in the apartment.

22.     The Defendants often did not finish dinner until midnight.  They demanded that Ms. Gurung clean up the dinner dishes and dining area before bed and that she serve them after dinner beverages.

23.     When the Defendants had parties, which occurred several times per month, Ms. Gurung was required to prepare the food, set up, and serve as wait staff.  She was also required to clean after these events; working as late as 3:00 A.M.

24.     Ms. Gurung also became responsible for catering to the Defendant's numerous house guests, who often stayed with the Defendants for extended periods.

25.     Defendants also demanded that Ms. Gurung provide services to another family in California for approximately 45 days.  Ms. Gurung was required to clean, cook, assist with

gardening, and provide child care in a large three bedroom home.  While in California, Ms. Gurung slept on the floor even though there were empty bedrooms.

**C.      Enforced Isolation, Psychological Abuse, Coercion, and Failure to Pay Wages**

26.      Defendants coerced Ms. Gurung to work for them through a practice and pattern of psychological abuse, enforced isolation, and threats of legal coercion, and physical abuse.

27.      Defendants often yelled at and physically threatened Ms. Gurung for the most miniscule of reasons.  For example, the Defendants ridiculed Ms. Gurung and threatened to throw food at her if they did not like her cooking.

28.      Mr. Malhotra often hovered over Ms. Gurung with a menacing look while he yelled at her.

29.      Ms. Gurung was often afraid to help herself to food when hungry at risk of increased abuse.  On one occasion, Ms. Malhotra counted individual slices of bread and berated Ms. Gurung eating a slice of bread, without express permission.  On another occasion, when Ms. Gurung asked the Defendants for rice, they refused.

30.      Defendants falsely accused Ms. Gurung of stealing and selling food from the apartment.

31.      The Defendants did not permit Ms. Gurung to leave their apartment without escort by one of the Defendants unless she was performing chores for the Defendants, such as grocery shopping.

32.      The Defendants did not permit Ms. Gurung to take public transportation by herself.  Defendants warned Ms. Gurung that if she took the bus or train by herself, she would be arrested by the police.

33.     Despite working approximately sixteen hour days, every day of the week, Ms. Gurung was never given any time off to leave the apartment to make any friends or attend worship services.

34.     Defendants restricted the amount of time and frequency Ms. Gurung could call her family in India, even though Ms. Gurung's mother was sick and paralyzed.

35.     Defendants denied Ms. Gurung's request to visit her sick mother.

36.     Ms. Malhotra confiscated Ms. Gurung's passport.  Ms. Gurung was allowed access to her passport on only one occasion, when Ms. Malhotra demanded that Ms. Gurung provide child care to another family in California.  The Defendants otherwise kept Ms. Gurung's passport in their locked bedroom.  Despite Ms. Gurung's numerous requests for the passport, the Defendants repeatedly refused.  Defendants still have Plaintiff's passport.

37.     Over the course of approximately 40 months, Ms. Gurung only received a one-time payment of 5,500 rupees, which is less than US$120.

38.     On several occasions, Ms. Gurung requested her wages, and Defendants refused to pay her or promised that they would pay her later.

39.     When Ms. Gurung asked Defendants for spending money, the Defendants refused and told her there was no need.

40.     When Ms. Gurung asked the Defendants to pay her and to return her passport, so that she could leave, the Defendants refused and threatened her.  The Defendants warned Ms. Gurung that, if she ever tried to leave, the police would beat and arrest her.  The Defendants also threatened that the police would take any of Ms. Gurung's money and send her back to India as cargo.

41.     Ms. Gurung became afraid for her safety and suffered severe emotional distress because of the Defendants' actions.

42.     In late July 2009, while the Defendants were out of the apartment, Ms. Gurung fled to the home of a young woman she managed to meet when shopping for the Defendants.

43.     All of the conduct of the Defendants described above was willful and intentional.

### FIRST CLAIM FOR RELIEF
**(Trafficking With Respect To Peonage, Slavery, Involuntary Servitude Or Forced Labor In Violation Of 18 U.S.C §§ 1590, 1595)**

44.     Plaintiff realleges all allegations in all preceding paragraphs as if fully set forth here.

45.     By inducing Plaintiff to accept employment with them in the United States through fraud and deception for the purposes of subjecting her to a condition of involuntary servitude, forced labor and enslavement, the Defendants engaged in trafficking of Plaintiff in violation of 18 U.S.C. § 1590, which makes culpable anyone whom "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services."

46.     Plaintiff brings these claims pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of trafficking.

47.     The Defendants' actions were conceived of maliciously with a criminal indifference to civil obligations, and by a pattern and practice of subjecting Plaintiff to threats of physical assaults, continuous verbal abuse, and threatened abuse and/or abuse of legal process.

48.     Numerous international instruments, customary international norms, domestic statutes and case law, and international case law establish that human trafficking violates the law of nations.  Make authorities include:  the Universal Declaration of Human Rights, Dec. 10, 1948, G.A. Res. 217A (II), U.S. Doc. A/810 at 71; the International Covenant on Civil and Political Rights, Dec. 16, 1966, 999 G.A. Res. 2200A(XXI), U.N. Doc. A/6316, 999

U.N.T.S. 17, 61 I.L.M. 368 (1967); and the Protocol to Prevent, Suppress, and Punish

Trafficking in Persons, Especially Women and Children, Supplementing the United Nations

Convention Against Transnational Organized Crime, Nov. 15, 2000, G.A. res. 55/25, annex

II, U.N. Doc. A/45/49.  These prohibitions against trafficking in persons are reflected in United

States law in the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1590, as well as other

U.S. authorities.

49.     As a proximate result of Defendants' actions, Plaintiff suffered severe pain and

suffering, including emotional distress, humiliation, embarrassment, and substantial lost wages.

**SECOND CLAIM FOR RELIEF**
**(Forced Labor Violation Of 18 U.S.C. §§ 1589, 1595)**

50.     Plaintiff realleges and incorporates by reference all allegations in all preceding

paragraphs as if fully set forth here.

51.     The Defendants knowingly obtained Plaintiff's labor and services by "means of

serious harm or threats of serious harm. . . by means of the abuse or threatened abuse of law or

legal process; . . . by means of any scheme, plan, or pattern intended to cause the person to

believe that, if that person did not perform such labor or services, that person . . . would suffer

serious harm" in violation of the Forced Labor provision of the Trafficking Victims Protection

Act, 18 U.S.C. § 1589.

52.     Plaintiff brings these claims pursuant to 18 U.S.C. § 1595, which provides a civil

cause of action for victims of forced labor.

53.     As a proximate result of Defendants' actions, Plaintiff suffered severe pain and

suffering, including emotional distress, humiliation, embarrassment, and substantial lost wages.

## THIRD CLAIM FOR RELIEF
### (Involuntary Servitude In Violation Of 18 U.S.C. §§ 1584, 1595 And The Thirteenth Amendment Of The United States Constitution)

54.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully here.

55.     Plaintiff brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of involuntary servitude and under the private cause of action implied under the 13th Amendment of the United States Constitution, and under 18 U.S.C. § 1584, which prohibits "knowingly and willfully [holding a person in] involuntary servitude…or bring[ing] within the United States any person so held."

56.     As alleged above, the Defendants used threats of physical harm and mental and legal coercion to induce coercion to induce Plaintiff to work against her will, requiring her to work for virtually no pay.

57.     The Defendants' threats and coercion caused Plaintiff to reasonably believe that she had no alternative but to continue her service for the Defendants.

58.     Given her young age and her inability to speak and decipher the English language, Plaintiff was highly vulnerable to such threats and coercion.  Defendant Ms. Malhotra's status as a high ranking Indian government official only exacerbated this vulnerability.

59.     The Defendants committed the acts alleged here maliciously, fraudulently, and oppressively, with a criminal indifference to civil obligations, and with the wrongful intent of injuring Plaintiff.  The Defendants committed these tortuous acts in conscious disregard of Plaintiff's rights.

60.     Through such actions, the Defendants directed, assisted, conspired, and acted in concert with each other to create and enforce a system of involuntary servitude prohibited by the Thirteenth Amendment of the United States Constitution and 18 U.S.C. § 1584.

61.     As a direct and proximate result of these actions, Plaintiff has sustained damages, including emotional distress, economic losses and physical injury.

## FOURTH CLAIM FOR RELIEF
### (Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor In Violation of 18 U.S.C. §§ 1592, 1595)

62.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully here.

63.     The Defendants knowingly concealed, removed, confiscated, or possessed Plaintiff's passport and other immigration documents or any other actual or purported government identification document.

64.     Defendants knowingly controlled Plaintiff's above documents in the course of trafficking Plaintiff, holding her in involuntary servitude, and subjecting her to forced labor, in violation of 18 U.S.C. § 1592, which finds unlawful anyone who "knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document . . . of another person."

65.     Defendants knowingly controlled Plaintiff's above documents to prevent or restrict Plaintiff's liberty to move or travel, in order to maintain Plaintiff's labor or services.

66.     Plaintiff brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of 18 U.S.C. § 1592.

67.     As a proximate result of Defendants' actions, Plaintiff suffered severe pain and suffering, including emotional distress, humiliation, embarrassment, and substantial lost wages.

## FIFTH CLAIM FOR RELIEF
### (Alien Tort Claims Act Violation Under 28 U.S.C. § 1350)

68.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

69.     Plaintiff brings this claim pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350, which grants the district court original jurisdiction "of any civil action by an alien for a tort only, committed in violation of the law of nations or treaty of the United States."

70.     Defendants' actions as set forth above constitute the torts of trafficking in persons, involuntary servitude, forced labor, and slavery.

71.     Trafficking in persons is a modern day form of slavery, and along with involuntary servitude and forced labor, constitutes a tort in violation of the law of nations and/or in violation of treaties of the United States.

72.     Defendants' actions as set forth above constitute the tort of false imprisonment, which also constitutes a tort in violation of the law of nation and/or in violation of the treaties of the United States.

73.     The law of nations includes the Universal Declaration of Human Rights, G.A. Res. 217A (Ill.), U.N. Doc. A/810, at 71 (1948); the International Covenant on Civil and Political Rights, Dec. 19, 1966, 999 U.N.T.S. 171, 61 I.K.M. 368; the Slavery Convention on the Abolition of Slavery, the Slave Trade and Institutions and Practices Similar to Slavery, Sept. 7, 1956, 18 U.S.T. 3201, 266 U.N.T.S. 3; The Internal Labour Organisation (ILO) on Fundamental Principles and Rights at Work, International Labour Conference (ILC) 86th Sess., June 19, 1998, § 2(c), 37 I.L.M. 1233; the Convention Concerning Forced or Compulsory Labour, June 28, 1930, 39 U.N.T.S. 55; and the Convention Concerning the Abolition of Forced Labour, June 25, 1957, 320 U.N.T.S. 291.

74.     Plaintiff suffered injuries as a result of these actions by Defendants and is entitled to compensatory and punitive damages to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Unpaid Federal Minimum Wages Under The Federal Labor Standards Act)

75.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully here.

76.     The Defendants employed Plaintiff within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203(d)-(e).

77.     The Defendants failed to pay Plaintiff minimum wages, in violation of 29 U.S.C. § 206(f) and the United States Department of Labor regulations.

78.     Defendants' failure to pay Plaintiff the minimum wage was willful within the meaning of 29 U.S.C. § 255(a), which specifies that "[a]ny employee . . . who in any workplace is employed in domestic service in one or more households, and . . . is so employed for more than 8 hours in the aggregate, shall be paid wages for such employment in such workweek at a rate not less than the wage rate in effect under [this law]."

79.     At all times relevant hereto, the relationship between the Defendants and Plaintiff was one of private master and servant, and Plaintiff was not employed as if she were an employee of a governmental agency or authority.

80.     Due to the Defendants' willful violation of the FLSA, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. §§ 201, *et seq.*, and the United States Department of Labor Regulations.

## SEVENTH CLAIM FOR RELIEF
### (Unpaid State Minimum Wages Under The New York Labor Law)

81.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

82.     Defendants employed Plaintiff within the meaning of New York Labor Law ("NYLL") §§ 2, 190, and 651.

83.     Defendants failed pay Plaintiff at the applicable minimum hourly wage, in violation of the New York Minimum Wage Act and its regulations, specifically NYLL § 652 and N.Y. Comp. Codes R. and Regs. Tit. 12, § 142-2.1, which requires that "every employer…pay to each of its employees for each hour worked" the applicable minimum wage established under the same provision.

84.     Defendants' failure to pay Plaintiff minimum wages was willful.

85.     At all times relevant hereto, the relationship between the Defendants and Plaintiff was one of private master and servant, and Plaintiff was not employed as if she were an employee of a governmental agency or authority.

86.     Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid minimum wages in an amount to be determined at trial, plus an amount equal to one quarter of Plaintiff's unpaid minimum wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

## EIGHTH CLAIM FOR RELIEF
### (Child Labor Law Violations Under NYLL)

87.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

88.     Defendants employed Plaintiff within the meaning of NYLL §§ 2, 190, and 651.

89.     Defendants willfully employed Plaintiff, a minor seventeen years old when she began her employment with Defendants, for "more than eight hours per day," for "more than 48

hours per week," and for "more than six days per week," all expressly prohibited under NYLL § 143.2 governing the employment of minors sixteen to seventeen years of age.

## NINTH CLAIM FOR RELIEF
### (Unpaid Overtime Wages Under the NYLL)

90.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

91.     Defendants employed Plaintiff within the meaning of  NYLL §§ 2, 190, and 651.

92.     Defendants violated New York Minimum Wage Act and its regulations, specifically N.Y. Comp. Codes R. and Regs. Tit. 12, § 142-2.2, because they failed to pay Plaintiff "for overtime at a wage rate of one and one-half times the employee's regular rate" for each hour worked in excess of forty hours per week.

93.     Defendants' failure to pay Plaintiff minimum wages was willful.

94.     At all times relevant hereto, the relationship between the Defendants and Plaintiff was one of private master and servant, and Plaintiff was not employed as if she were an employee of a governmental agency or authority.

95.     Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages in an amount to be determined at trial, plus an amount equal to one quarter of Plaintiff's unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

## TENTH CLAIM FOR RELIEF
### (Unpaid Spread-of-Hours Pay Under the NYLL)

96.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

97.   Defendants employed Plaintiff within the meaning of NYLL §§ 2, 190, and 651.

98.   Defendants failed to pay Plaintiff spread of hours wages, in violation of NYLL § 21(11) and N.Y. Comp. Codes R. and Regs. Tit. 12, § 142-2.4, which states that "[a]n employee shall receive one hour's pay at the basic minimum wage rate in addition to the minimum wage required in this part for any day in which . . . the spread of hours exceeds 10 hours."

99.   Defendants' failure to pay Plaintiff spread-of-hour wages was willful.

100.   At all times relevant hereto, the relationship between the Defendants and Plaintiff was one of private master and servant, and Plaintiff was not employed as if she were an employee of a governmental agency or authority.

101.   Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, damages in the amount of unpaid spread of hours wages and an amount equal to one quarter of Plaintiff's unpaid spread of hour wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

## ELEVENTH CLAIM FOR RELIEF
### (Failure to Pay Earned Wages under NYLL)

102.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

103.   Defendants employed Plaintiff within the meaning of NYLL §§ 2, 190, and 651.

104.   Defendants failed to pay Plaintiff her wages earned in accordance with the agreed terms of employment, and at least semi-monthly, in violation of NYLL § 191 requiring that a domestic worker "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently then semi-monthly."

105.    Defendants' failure to pay Plaintiff her wages earned in accordance with the agreed terms of employment and at least semi-monthly was willful.

106.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid earned wages in an amount to be determined at trial, plus an amount equal to one quarter of Plaintiff's unpaid earned wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

## TWELFTH CLAIM FOR RELIEF
### (Fraud)

107.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

108.    Defendants intentionally, knowingly, negligently or innocently misrepresented to Plaintiff the conditions of Plaintiff's employment in the United States in order to induce her to come to the United States.

109.    Defendants deceived Plaintiff with the above-mentioned misrepresentations, including the promise of specified wages and proper working conditions in order to entice Plaintiff to come to the United States and to force her to work as a domestic worker in their household.

110.    Defendants induced Plaintiff to come to the United States knowing of and intending that their misrepresentations would induce Plaintiff to travel to the United States in order to receive the promised employment.

111.    Plaintiff did in fact rely on Defendants' misrepresentation to her detriment and as a result was forced to work as a domestic worker for Defendants, thereby enduring psychological abuse that accompanied this employment at great psychological and financial detriment.

112.   At the time that Defendants made the foregoing representations and promises to Plaintiff, they had no intention of carrying out such representations and promises.

113.   As a direct and proximate result of these actions, Plaintiff has sustained damages.

114.   Accordingly, Plaintiff is entitled to recover damages in an amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF
### (False Imprisonment)

115.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully here.

116.   Defendants knowingly and intentionally confined Plaintiff within their house by threats of physical harm, by legal coercion, and by constant verbal abuse so as to deprive Plaintiff of her freedom of movement.

117.   Plaintiff was conscious of being confined and did not consent to her confinement.

118.   Defendants confined Plaintiff knowingly and willfully and with malice and reckless disregard for her rights.

119.   As a proximate result of Defendants' conduct, Plaintiff suffered pain and suffering, including emotional distress and embarrassment and humiliation.

## FOURTEENTH CLAIM FOR RELIEF
### (Conversion)

120.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully here.

121.   Defendants wrongfully took and assumed ownership over Plaintiff's passport without her authorization and to the exclusion of Plaintiff's ownership rights in the property.

122.   As a result, Plaintiff is entitled to return of the property and to compensatory and punitive damages in an amount to be determined at trial.

## FIFTEENTH CLAIM FOR RELIEF
### (Assault)

123.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

124.    Defendants' actions and/or words set forth above were intended to cause harmful and/or offensive contact with Plaintiff and/or the apprehension imminent harmful and/or offensive physical contact without Plaintiff's consent.

125.    Defendants' actions were malicious and cruel.

126.    As a direct and proximate result of the actions and/or works of the Defendants, Defendants placed Plaintiff in apprehension of imminent harmful and/or offensive physical contact.

127.    As a result of the foregoing, Plaintiff has suffered and continues to suffer emotional distress, including humiliation, stress and trouble sleeping, and loss of income.

## SIXTEENTH CLAIM FOR RELIEF
### (Intentional Infliction Of Emotional Distress)

128.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

129.    Defendants insulted Plaintiff on a daily basis in an extreme and outrageous manner by calling her a thief and accusing her of selling their food.  Defendants also acted well beyond the bounds of normal human decency on a continuous and systematic basis by raising their fists at Plaintiff thereby physically threatening Plaintiff and by threatening to throw food on her head.  Defendants' caused Plaintiff to fear the police by repeatedly stating that the police would "beat and arrest" Plaintiff should she ever leave their employ.

130.    As a result of Defendants' outrageous and extreme behavior, Plaintiff was put in fear of her safety and health and suffered and continues to suffer extreme emotional distress.

131.   Defendants knowingly and intentionally acted with the goal of causing Plaintiff extreme emotional distress.

## SEVENTEENTH CLAIM OF RELIEF
### (Negligent Infliction Of Emotional Distress)

132.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

133.   Defendants insulted Plaintiff on a daily basis in an extreme and outrageous manner by calling her a thief and accusing her of selling their food.  Defendants also acted well beyond the bounds of normal human decency on a continuous and systematic basis by raising their fists at Plaintiff thereby physically threatening Plaintiff. Defendants' caused Plaintiff to fear the police by repeatedly stating that the police would "beat and arrest" Plaintiff should she ever leave their employ.

134.   As a result of Defendants' insults and threats of physical abuse, Plaintiff was put in fear of her safety and health and has suffered and continues to suffer extreme emotional distress.

135.   By behaving so outrageously, the Defendants acted at least negligently in causing Plaintiff's extreme emotional distress.

## EIGHTEENTH CLAIM FOR RELIEF
### (Promissory Estoppel)

136.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

137.   As set forth above, Defendants made a clear and unambiguous promise that Plaintiff would be paid 5,000 rupees per month for her cooking and cleaning services beginning approximately March 2006 until approximately July 2009.

138.    By making this promise, Defendants reasonably and foreseeably expected that, by this representation alone, Plaintiff would be induced to provide services to Defendants.

139.    In reliance on Defendants' promise, Plaintiff provided her domestic services to Defendants.

140.    As a consequence of Defendants' refusal to honor their promise, Plaintiff has been damaged financially in an amount to be determined at trial.

## NINETEENTH CLAIM FOR RELIEF
### (Quantum Meruit)

141.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

142.    From approximately March 2006 to approximately July 2009, Plaintiff provided cooking and cleaning services to Defendants in good faith.

143.    Defendants accepted these services, and Plaintiff expected to be fairly and equitably compensated for the services rendered to Defendants, the value of which is calculable.

144.    Defendants did not fairly and equitably compensate Plaintiff.

145.    Plaintiff should be compensated in quantum meruit in an amount to be determined at trial.

## TWENTIETH CLAIM FOR RELIEF
### (Unjust Enrichment)

146.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

147.    Defendants have been unjustly enriched because they failed to compensate Plaintiff the value of her labor.

148.    Defendants have been unjustly enriched at Plaintiff's expense.

149.    It would be inequitable for Defendants to be permitted to retain such benefits without paying Plaintiff the value of the benefits conferred.

## **DEMAND FOR JURY TRIAL**

150.    Plaintiff is entitled to and hereby demands a jury trial in this matter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against Defendants as follows:

    (a)    awarding Plaintiff compensatory and punitive damages in an amount to be proven at trial;

    (b)    awarding Plaintiff prejudgment and post judgment interest;

    (c)    awarding Plaintiff reasonable attorneys' fees, together with the costs and disbursements of this action;

    (d)    ordering Defendants to return Plaintiff's passport; and

    (e)    granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       July 1, 2010

                                        GIBSON, DUNN & CRUTCHER LLP

                                        By:_____
                                              Mitchell Karlan [MK-4413]

                                        200 Park Avenue, 47th Floor
                                        New York, New York 10166-0193
                                        Phone: 212.351.4000
                                        Fax: 212.351.4035

                                        *and*

                                        URBAN JUSTICE CENTER
                                        Carmela Huang [CH-2008]
                                        Amy Tai [AT-0366]
                                        123 William Street, 16th Floor
                                        New York, NY 10038
                                        Phone: 646.602.5600
                                        Fax: 212-533-4598

                                        *Attorneys for Plaintiff Shanti Gurung*