UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
SHANTI GURUNG                                                :
                                                             :
            Plaintiff,                                       :
                                                             :
      -against-                                              :
                                                             :        Case No. 10-CIV 5086 (VM)
JOGESH MALHOTRA and NEEENA MALHOTRA,                         :
                                                             :
            Defendants.                                      :
                                                             :
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S

## APPLICATION FOR DAMAGES


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 46th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*and*

URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, New York 10038
Telephone: (646) 459-3026
Facsimile: (212) 533-4598


*Attorneys for Plaintiff Shanti Gurung*

December 22, 2011

## TABLE OF CONTENTS

**Page Nos.**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 1

ARGUMENT ........................................................................................................ 8

I.   DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER
     FEDERAL AND STATE WAGE AND HOUR LAWS ............................... 8

     A.   Defendants are jointly and severally liable under the FLSA and
          NYLL. ................................................................................................. 8

     B.   Plaintiff has established the elements of each FLSA and NYLL
          claim, including damages. ................................................................. 8

     C.   Defendants' violations of the FLSA and NYLL were willful. ......... 12

     D.   Liquidated Damages ....................................................................... 14

     E.   NY Prejudgment Interest ............................................................... 16

II.  PLAINTIFF IS ENTITLED TO DAMAGES FOR DEFENDANTS'
     VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION
     REAUTHORIATION ACT ..................................................................... 16

III. PLAINTIFF IS ENTITLED TO DAMAGES FOR HER COMMON LAW
     CLAIMS ................................................................................................ 17

     A.   Emotional Distress .......................................................................... 17

     B.   Assault ............................................................................................. 20

     C.   False Imprisonment ........................................................................ 21

     D.   Fraud ............................................................................................... 22

     E.   Conversion ...................................................................................... 23

     F.   Contract Claims .............................................................................. 24

IV.  PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES ON THE
     TVPRA AND TORT CLAIMS ............................................................... 25

V.      ATTORNEYS' FEES AND COSTS ................................................................27

CONCLUSION ................................................................................................................29

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page Nos.**</u>

**Cases**

*Ahrens v. Stalzer*,
No. 17791/01, 791 N.Y.S.2d 867, 4 Misc.3d 1013(A) (N.Y. Dist. Ct. 2004) ........................ 19

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946) ............................................................................................................. 9

*Ashare v. Mirkin, Barre, Saltzstein & Gordon, P.C.*,
106 Misc. 2d 866, 435 N.Y.S.2d 438 (Sup. Ct. Suffolk Cnty. 1980) .................................... 26

*Aviles v. Q.P.N. Prods., Inc.*,
CV-05-2830 (CBA)(JMA), 2006 U.S. Dist. LEXIS 63327 (E.D.N.Y. Sept. 6, 2006) ..... 17, 18

*Ayres v. 127 Rest. Corp.*,
12 F. Supp. 2d 305 (S.D.N.Y. 1998) .............................................................................. 13, 15

*Bausch & Lomb, Inc. v. Bressler*,
977 F.2d 720 (2d Cir. 1992) ................................................................................................ 25

*Bell v. Hood*,
327 U.S. 678 (1946) ........................................................................................................... 26

*Bert v. Port Auth. of N.Y.*,
166 A.D.2d 351, 561 N.Y.S.2d 416 (1st Dep't 1990) ......................................................... 21

*Cao v. Wu Liang Ye Lexington Rest., Inc.*,
No. 08 Civ. 3725 (DC), 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) ................................. 9

*Caron v. United States*,
410 F. Supp. 378 (D.R.I. 1975) ........................................................................................... 18

*Citizens Nat'l Bank v. Osetek*,
353 F. Supp. 958 (S.D.N.Y. 1973) ...................................................................................... 24

*Clifford R. Gray, Inc. v. LeChase Constr. Servs. LLC*,
51 A.D.3d 1169, 857 N.Y.S.2d 347 (3d Dep't 2008 ........................................................... 24

*Cyberlease, LLC v. JP Morgan Chase Bank*,
No. 04 Civ. 1221 (NRB), 2005 U.S. Dist. LEXIS 17639 (S.D.N.Y. Aug. 22, 2005) ........... 23

*Dong v. CCW Fashion, Inc.*,
Nos. 06 Civ. 4973 (LAP)(DFE), 07 Civ. 9741 (LAP)(DFE), 2009 WL 884680
(S.D.N.Y. Feb. 19, 2009) .................................................................................................... 10

*Fisher v. Vassar Coll.*,
70 F.3d 1420 (2d Cir. 1995) ................................................................................................ 13

*Frank v. Feiss*,
266 A.D.2d 825, 698 N.Y.S.2d 363 (4th Dep't 1999) ......................................................... 25

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
    503 U.S. 60 (1992)..................................................................................................... 26

*Fu v. Pop Art Int'l Inc.*,
    No. 10 Civ. 8562, 2011 WL 4552436 (S.D.N.Y. Sept. 19, 2011)......................... 16

*Garcia v. Lawrence Hosp.*,
    5 A.D.3d 227, 228, 773 N.Y.S.2d 59 (1st Dep't 2004) ........................................ 20

*Halio v. Lurie*,
    15 A.D.2d 62, 222 N.Y.S.2d 759 (2d Dep't 1961) ............................................... 20

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999).......................................................................... 13, 15

*Kajtazi v. Kajtazi*,
    488 F. Supp. 15 (E.D.N.Y. 1978) ........................................................................ 21

*Kang v. Inno Asset Dev., LLC*,
    No. 08-CV-4848 (SLT)(JMA) .............................................................................. 11

*KAPL, Inc. v. Meacham*,
    544 U.S. 957 (2005)............................................................................................. 18

*Ke v. Saigon Grill, Inc.*,
    595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008)......................................................... 15

*Khan v. IBI Armored Servs., Inc.*,
    474 F. Supp. 2d 448 (E.D.N.Y. 2007) ................................................................. 13

*Lama Holding Co. v. Smith Barney, Inc.*,
    88 N.Y.2d 413 (1996) .......................................................................................... 23

*Laurie Marie M. v. Jeffrey T.M.*,
    159 A.D.2d 52-56, 559 N.Y.S.2d 336 (2d Dep't 1990)................................. 19, 25

*Licea v. Curacao Drydock Co., Inc.*,
    584 F. Supp. 2d 1355 (S.D. Fla. 2008) ............................................................... 27

*Lin v. Hayashi Ya II, Inc.*,
    No. 08 Civ. 6071 (SAS)(AJP), 2009 WL 289653 (S.D.N.Y. Jan. 30, 2009) ....... 16

*Liu v. Jen Chu Fashion Corp.*,
    No. 00-civ-4221 (RJH) (AJP), 2004 WL 33412 (S.D.N.Y. Jan. 7, 2004)........... 1, 16

*Luna v. Am. Airlines*,
    676 F. Supp. 2d 192 (S.D.N.Y. 2009).................................................................. 20

*Maliza v. 2001 MAR-OS Fashion*,
    No. CV-07-463 (ERK)(VVP), 2010 WL 502955 (E.D.N.Y. Feb. 10, 2010) .......... 15, 20

*Mazengo v. Mzengi*,
    Civ. No. 07-756 (RMC)(AK), 2007 U.S. Dist. LEXIS 99377 (D.D.C. Dec. 20, 2007)......... 17

*McLaughlin v. Richland Shoe*,
    486 U.S. 128 (1988)............................................................................................. 13

*Meacham v. Knolls Atomic Power Lab.*,
  381 F.3d 56, 78 (2d Cir. 2004)....................................................................... 18

*Moore v. Houlihan's Rest., Inc.*,
  07-CV-03129 (ENV) (RER), 2011 U.S. Dist. LEXIS 64452 (E.D.N.Y. May 10, 2011)....... 18

*O'Donnell v. K-Mart Corp.*,
  100 A.D. 488, 474 N.Y.S.2d 344 (4th Dep't 1984)............................................. 21

*O'Donnell v. K-Mart Corp.*,
  100 A.D.2d 488 (4th Dep't 1984).................................................................. 26

*Olsen v. Cnty. of Nassau*,
  615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) ....................................................... 18

*P&L Grp., Inc. v. Garfinkel*,
  150 A.D.2d 663, 541 N.Y.S. 2d 535 (2d Dep't 1989) ...................................... 13

*Pena Canal v. de la Rosa Dann*,
  No. 09-03366 (CW), 2010 U.S. Dist. LEXIS 97856 (N.D. Cal. Sept. 2, 2010)............. 17, 27

*Perricone v. Success Motivation Instit.*,
  No. 79 Civ 5125 (WCC), 1982 U.S. Dist. LEXIS 12156 (S.D.N.Y. Apr. 7, 1982) ............. 23

*Peters v. Rome City School District*,
  298 A.D.2d 864, 747 N.Y.S.2d 867 (4th Dep't 2002 .......................................... 20

*Quinby v. WestLB AG*,
  04 Civ. 7406, 2008 WL 3826695 (S.D.N.Y. Aug. 15, 2008) ................................. 18

*Reich v. S. New England Telecomm. Corp.*,
  121 F.3d 58, 69 (2d Cir. 1995)..................................................................... 9

*Rios. v. Neighborhood Constr. Corp.*,
  No. 07 Civ 8701 (LTS), 2009 WL 3335354 (S.D.N.Y. Oct. 14, 2009)....................... 13

*Robey v. State of N. Y.*,
  351 N.Y.S.2d 788 (N.Y. Ct. Cl. 1973)............................................................ 21

*Rocanova v. Equitable Life Assur. Soc'y*,
  83 N.Y.2d 603 (1994) .............................................................................. 25

*Rodriguez v. United States*,
  No. 81 Civ. 7628 (CBM), 1986 U.S. Dist. LEXIS 23899 ( S.D.N.Y. June 20, 1986) .......... 18

*Shim v. Millennium Grp.*,
  08-CV-4022, 2009 U.S. Dist. LEXIS 124107 (E.D.N.Y. Oct. 2, 2009)....................... 11

*Smith v. Wade*,
  461 U.S. 30 (1983)................................................................................... 26

*Thompson v. Hickey*,
  283 A.D.2d 939, 724 N.Y.S.2d 241 (4th Dep't 2011).......................................... 21

*Walker v. Sheldon*,
  10 N.Y.2d 401 (1961) ............................................................................. 25, 26

*Watson v. E.S. Sutton Inc.,*
    02 Civ. 2739, 2005 WL 2170659 (S.D.N.Y. Sept. 6, 2005)..................................... 18

*Yaron v. Yaron,*
    84 Misc. 2d 644, 378 N.Y.S.2d 285 (Sup. Ct. N.Y. Cnty. 1975) ........................... 24

**Statutes**

18 U.S.C. § 1589 ..................................................................................................... 16

18 U.S.C. § 1590 ..................................................................................................... 16

18 U.S.C. § 1592 ..................................................................................................... 16

18 U.S.C. § 1595(a) ........................................................................................... 26, 28

18 U.S.C. §1584 ...................................................................................................... 16

29 U.S.C. § 203(d) .................................................................................................... 8

29 U.S.C. § 206 (2006) ............................................................................................. 9

29 U.S.C. § 206(a)(1) ................................................................................................ 9

29 U.S.C. § 216(b) ............................................................................................. 15, 28

29 U.S.C. § 216(b) (2006) ....................................................................................... 14

29 U.S.C. § 218(a) ..................................................................................................... 9

29 U.S.C. § 255(a) ................................................................................................... 13

8 U.S.C. §1375c(b)(2)............................................................................................... 14

**Other Authorities**

9 FAM 41.22 N4.4(a)............................................................................................... 14

9 FAM 41.22 N4.4(b)(3)........................................................................................... 14

9 FAM 41.22 N4.4(b)(4)........................................................................................... 14

9 U.S. Dep't of State, Foreign Affairs Manual § 41.21 N.6.2(a)(2) ........................... 11

N.Y. C.P.L.R. § 5001(b)........................................................................................... 16

N.Y. C.P.L.R. §§ 5001-04 (McKinney 2011)............................................................ 16

N.Y. Comp. Code R. & Regs. tit. 12 § 142-2.18 (McKinney 2011) ............................ 12

N.Y. Comp. Code R. & Regs. tit. 12 § 142-2.4 (McKinney 2011) .............................. 12

N.Y. Lab. Law § 170 (McKinney 2010) (amended 2011)........................................... 12

N.Y. Lab. Law § 191(1) (McKinney 2011) ................................................................ 11

N.Y. Lab. Law § 198 (4) ........................................................................................... 28

N.Y. Lab. Law § 198(1-a).................................................................................... 15, 28

N.Y. Lab. Law § 2(5) ................................................................................................. 8

N.Y. Lab. Law § 652 (McKinney 2011)...................................................................... 9

N.Y. Lab. Law § 652(1) (McKinney 2011) ........................................................... 10

N.Y. Lab. Law § 663(1) ................................................................................. 15, 28

N.Y. Lab. Law § 663(4) ..................................................................................... 28

N.Y. Lab. Law §§ 198(3), 663(3) (McKinney 2011) ........................................... 13

New York Courts § 241.03,¶ [3][b] .................................................................... 20

Restatement (Second) of Contracts § 90 cmt. d (1981) ..................................... 24

Restatement (Second) of Torts § 46(1) & cmt. j (1965) ..................................... 19

## PRELIMINARY STATEMENT

Plaintiff Shanti Gurung submits this memorandum of law in support of her prayer for damages. Upon the defaults of the Defendants Neena and Jogesh Malhotra, judgment has been entered for plaintiff and all allegations of the Complaint are deemed true. The Complaint pleads 20 claims of relief: (1) Trafficking with Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor; (2) Forced Labor; (3) Involuntary Servitude; (4) Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor; (5) Alien Tort Claims Act Violation; (6) Unpaid Federal Minimum Wages; (7) Unpaid State Minimum Wages; (8) Child Labor Law Violation; (9) Unpaid Overtime Wages; (10) Unpaid Spread-of-Hours Pay; (11) Failure to Pay Earned Wages; (12) Fraud; (13) False Imprisonment; (14) Conversion; (15) Assault; (16) Intentional Infliction of Emotional Distress; (17) Negligent Infliction of Emotional Distress; (18) Promissory Estoppel; (19) Quantum Meruit; and (20) Unjust Enrichment.

Plaintiff seeks statutory, compensatory and punitive damages as well as attorneys' fees and costs as set forth in the accompanying declarations, affidavits and affirmation: Mitchell Karlan, Amy Tai, Sharon Grysman, Shanti Gurung, Luna Ranjit, Suraj Pokharel and Preeti Yonjon.

## STATEMENT OF FACTS

The facts as alleged in the Complaint dated July 1, 2010, are admitted as a result of Defendants' default, except as to damages. *Liu v. Jen Chu Fashion Corp.*, No. 00-civ-4221 (RJH) (AJP), 2004 WL 33412, at *1 (S.D.N.Y. Jan. 7, 2004). A copy of the Complaint is attached to the Affirmation of Sharon Grysman, dated December 20, 2011 ("Grysman Affirm.") as Exhibit 1.

In March 2006, Plaintiff was trafficked to the United States from India by Neena and Jogesh Malhotra (collectively "the Defendants").  Compl. ¶ 18; Affidavit of Shanti Gurung ("Gurung Aff."), dated December 9, 2011, ¶ 2.  Ms. Gurung was only seventeen years old. Compl. ¶ 13; Gurung Aff. ¶ 6.  The Defendants promised Ms. Gurung that, in exchange for light cooking, light cleaning and working the occasional house party for a period of three years, they would pay her 5,000 rupees (approximate US$108) a month, with raises every six months. Compl. ¶ 14; Gurung Aff. ¶ 5.  Ms. Gurung was unaware that this promised amount was well below the state and federal minimum wages in New York.  Gurung Aff. ¶ 5.  Despite numerous requests for her wages, the Defendants refused to pay Ms. Gurung.  Compl. ¶ 38; Gurung Aff. ¶ 35.

The Defendants made all of the travel arrangements for Ms. Gurung, and procured for her a passport, an A-3 visa, and official identification from the Consulate of India. Compl. ¶ 16; Gurung Aff. ¶ 9.  In order to obtain her A-3 visa, Ms. Gurung was instructed by Neena Malhotra to tell the U.S. Embassy that she would be paid US$7 an hour and Neena Malhotra demanded that she sign paperwork written in English, which she could not read or understand.  Compl. ¶ 17; Gurung Aff. ¶¶ 9-10.  No one explained to Ms. Gurung the paperwork she was ordered to sign.  Gurung Aff. ¶ 9.  Ms. Gurung later subpoenaed an employment contract from the U.S. Department of State, which stated that the Malhotras would pay Ms. Gurung "wages at the prevailing hourly rates of no less than US$7 per hour."  *See* Grysman Affirm., Ex. 3.  Ms. Gurung complied with Ms. Malhotra's orders—completely unaware of U.S. law—fearing the repercussions if she did not.  Gurung Aff. ¶ 10.

Ms. Gurung traveled from India to New York with Neena Malhotra on March 29, 2006. Compl. ¶ 18; Gurung Aff. ¶ 2.  Upon arriving in New York, Neena Malhotra confiscated Ms.

Gurung's passport and A-3 visa.  Compl. ¶ 36; Gurung Aff. ¶ 13.  Ms. Gurung was only given

access to her passport for traveling at the direction of the Malhotras. *Id.*  The Defendants

concealed Ms. Gurung's passport, keeping it locked in their master bedroom. *Id.*  When Ms.

Gurung asked the Defendants for her passport on many occasions, the Defendants refused to turn

over her documents, claiming that she had no need for them and that she would lose them

because she was "too young." *See* Gurung Aff. ¶ 13.  Ms. Gurung to this day still has yet to

receive her passport or visa from the Defendants. *See* Compl. ¶ 36.

Once in the United States, it became immediately apparent to Ms. Gurung that her

workload would be much more than what was initially represented.  In addition to cooking and

cleaning, Ms. Gurung was responsible for completing chores, grocery shopping, laundry, and

performing daily massages for Ms. Malhotra.  Compl. ¶ 19; Gurung Aff. ¶ 17.  From March

2006 to June 2006, Ms. Gurung would work approximately twelve hour days, seven days a

week.  Compl. ¶ 20; Gurung Aff. ¶ 14.  When Mr. Malhotra arrived in June 2006, Ms. Gurung's

workload and living conditions worsened dramatically.  Compl. ¶ 21; Gurung Aff. ¶ 14.  Ms.

Gurung's work hours were extended to approximately sixteen hours a day, seven days a week.

*Id.*  Ms. Gurung's day would begin at approximately 7:00 AM and would end around 12:00

midnight.  Compl. ¶ 22; Gurung Aff. ¶ 15.  She was rarely permitted breaks during her days.

Gurung Aff. ¶ 14.  Additionally, when Mr. Malhotra arrived in June 2006, Ms. Gurung was

moved from her own room to sleeping on the living room floor, even though there were empty

bedrooms in the apartment.  Compl. ¶ 21; Gurung Aff ¶ 16.  Ms. Gurung was afforded no

privacy and had no area to call her own.  Gurung Aff. ¶ 16.

Ms. Gurung was responsible for preparing, cooking, serving, and cleaning up the multiple

parties the Defendants hosted each month.  Gurung Aff. ¶ 15.  Ms. Gurung would often work as

late as 3:00 A.M. on the nights of these parties.  Compl. ¶ 23; Gurung Aff. ¶ 15.  In addition to

her regular work in the Malhotra's apartment in New York, the Defendants demanded that Ms.

Gurung accompany them and provide services for Ms. Malhotra's relatives in California for

approximately 45 days. Compl. ¶ 25.  During her employment in California, Ms. Gurung was

responsible for the cooking, cleaning, gardening, and childcare.  *Id.*  Again, even though there

were several empty bedrooms, Ms. Gurung was forced to sleep on the floor.  *Id.*

During her forty-month period of time with the Malhotras, Ms. Gurung was forced into

isolation, mistreated, and psychologically abused.  Compl. ¶ 26; Gurung Aff. ¶¶ 20-23, 28-31,

33, 49.  The Defendants often yelled at and physically threatened Ms. Gurung. Compl. ¶ 27;

Gurung Aff. ¶¶ 20, 22-23, 30.  Mr. Malhotra would hover over Ms. Gurung while yelling.

Compl. ¶ 28; Gurung Aff. ¶ 20.  On at least one occurrence, Ms. Malhotra grabbed Ms. Gurung

by the arm and dragged her from room to room, scolding her for calling India without a calling

card. Gurung Aff ¶ 30.  Ms. Malhotra's strong grip and long nails left bruises and scratches on

Ms. Gurung's arms.  *Id.* Mr. Malhotra often threatened to throw food at Ms. Gurung when he

was unsatisfied with her cooking.  Compl. ¶ 27; Gurung Aff. ¶ 20.

Ms. Gurung always felt hungry, as she was refused foods by the Defendants, including

rice, a staple of the Nepali diet.  Compl. ¶ 29; Gurung Aff. ¶ 23-26.  Ms. Gurung was also afraid

to help herself to food when hungry because of the Defendants' mistreatment of her.  Gurung

Aff. ¶¶ 23-25. For example, Ms. Malhotra kept count of the slices of bread in the kitchen, and

once yelled at Ms. Gurung for eating a slice of bread without permission.  Compl. ¶ 29; Gurung

Aff. ¶ 23.  The Malhotras also falsely accused Ms. Gurung of stealing and selling food.  Gurung

Aff. ¶ 24.  Ms. Gurung was only permitted to cook the food selected, which was exactingly

measured out by the Defendants; she was permitted to eat what was left over after the

Defendants had finished eating.  *Id.* ¶¶ 24-25.

The Defendants' control over Ms. Gurung's day to day activities led to her isolation.  She was restricted in her ability to practice her religion and was actively discouraged from learning how to use public transportation.  Compl. ¶ 32-33; Gurung Aff. ¶ 33.  Ms. Gurung had limited permission to leave the apartment – mostly for the purpose of running errands for the Defendants.  Gurung Aff. ¶ 29.  Ms. Gurung was constantly warned by the Defendants that if she took public transportation by herself, she would be arrested by the police who would beat, rape, and send her back to India as cargo.  Compl. ¶¶ 32, 40; Gurung Aff. ¶ 33.  For a vast majority of her time with the Defendants, Ms. Gurung was not permitted to take time off to relax or make friends in the city.  Compl. ¶ 33; Gurung Aff. ¶ 28.  The Defendants restricted Ms. Gurung's ability to maintain contact with her family back home in India, as Ms. Gurung was not permitted to make non-local calls unless she purchased a calling card at her own expense.  Compl. ¶ 34.  With little money to purchase calling cards, Ms. Gurung was severely limited in her ability to speak with her family, including her ill mother.  *Id.*  At one point, Ms. Gurung asked permission to see her sick mother, but the Defendants denied her request.  Compl. ¶ 35; Gurung Aff. ¶ 32.

In addition to constantly being hungry, Ms. Gurung suffered from exhaustion.  Gurung Aff. ¶ 48.  Due to her long work days she rarely was given sufficient time to sleep at night.  *Id.* ¶¶ 15, 48.  Ms. Gurung found it hard to sleep at night due to the constant pressure and stress that she was under.  *Id.* ¶ 48.  Ms. Gurung often cried for hours at night from the stress and sadness of her situation; this stress caused her to suffer from headaches, lack of sleep, and extreme stomach pains.  *Id.* ¶¶ 44, 47-49.

Contrary to her contract with the Malhotras and the verbal agreements made while in India, Ms. Gurung only received 5,500 rupees (approximately US$120), despite repeatedly

5

asking the Defendants for her earned wages.  Compl. ¶¶ 2, 37-40; Gurung Aff. ¶ 35.  The

Defendants routinely refused to pay Ms. Gurung and often told her they would pay her later.

Compl. ¶ 38; Gurung Aff. ¶ 35.  The Defendants grew angry with Ms. Gurung's continued

requests to be paid her wages.  The Defendants also refused to provide Ms. Gurung with

spending money for personal items.  Compl. ¶ 39. Ms. Gurung was not provided with, nor could

she personally afford, proper clothing to stay warm during the winters.  Gurung Aff. ¶ 29.  The

only money Ms. Gurung was able to collect were coins she found on the street and small tips

from party guests at the Malhotras' house. *Id.* ¶¶ 31, 40.

     The Defendants ensured that Ms. Gurung lived in a state of fear. Ms. Gurung was

routinely told that if she tried to leave she would be arrested by the police. Compl. ¶¶ 32, 40;

Gurung Aff. ¶¶ 33, 41. The Defendants added that the police would not only arrest her, but

would also beat and rape her.  Gurung Aff. ¶ 33.  Additionally, the Defendants threatened Ms.

Gurung that the police would steal her money and would send her back to India as cargo.

Compl. ¶ 40; Gurung Aff. ¶ 33.  These continued threats instilled a sense of fear in Ms. Gurung

that remains today.  Gurung Aff. ¶¶ 33, 41-43.  Ms. Gurung is still afraid when she sees a police

vehicle or hears emergency sirens. *Id.* ¶¶ 42-43.

     In July 2009, the Malhotras planned to return to India and told Ms. Gurung that she

would be transferred to another Indian official living in the same building in Manhattan.  *Id.* ¶

38.  On approximately July 28, 2009, fearing that things would remain the same or get worse,

Ms. Gurung summoned the courage to escape while the Defendants were busy shopping the day

before their flight to India.  Compl. ¶ 42; Gurung Aff. ¶ 39.  Ms. Gurung used what little money

she had to take a taxi to an acquaintance, a Nepali woman she met while grocery shopping.

Gurung Aff. ¶ 40.  Ms. Gurung fainted during the ride to the woman's apartment in Jackson

Heights.  Affidavit of Suraj Pokharel ("Pokharel Aff."), dated December 9, 2011, ¶ 7. Ms. Gurung experienced intense stomach and side pains and was hospitalized shortly after her escape.  Gurung Aff ¶ 44; Pokharel Aff ¶ 10; Affidavit of Luna Ranjit ("Ranjit Aff."), dated December 19, 2011, ¶ 23.

Ms. Gurung's tragedy did not end upon her escape.  On the contrary, her time at the Malhotras has left a lasting impact on her both physically and emotionally.  *See* Gurung Aff. ¶ 45; Pokharel Aff ¶¶ 10-11; Ranjit Att. ¶ 24.  While at the Malhotras, Ms. Gurung lost a staggering 29 kilograms (63.9 pounds), shrinking from 67 kilograms (147.4 pounds) to a miniscule 38 kilograms (86.3 pounds).  Gurung Aff. ¶ 27.

Ms. Gurung has often been sick since leaving the Malhotras.  Gurung Aff. ¶ 44-45; Pokharel Aff. ¶ 10.  She suffers from debilitating headaches, fatigue, fever, and severe stomach cramps from gastritis.  Gurung Aff. ¶¶ 44-45; Pokharel Aff. ¶ 10, Ranjit Aff. ¶¶ 23-24.  As a result of her illnesses, Ms. Gurung has been absent from work and her English language classes.  *See* Affidavit of Preeti Yonjon ("Yonjon Aff."), dated December 19, 2010, ¶ 8.  Ms. Gurung never experienced these symptoms before her time with the Malhotras. Gurung Aff. ¶ 44.

The near starvation Ms. Gurung suffered at the hands of the Malhotras dramatically altered her attitude towards food.  Whenever there is food in the office of Adhikaar, a community organization based in Queens, New York, Ms. Gurung gravitates towards it, as if there may not be enough food available later.  Ranjit Aff. ¶ 25.  Similarly, since moving in with her husband, Mr. Pokharel, Ms. Gurung constantly eats rice.  Pokharel Aff. ¶ 6.  At times, Ms. Gurung appears nervous and sad while she eats, fearful that she will be forced to subsist without rice again. Gurung Aff. ¶ 26.  Other times, she consumes the grain ravenously.  *Id.*; Pokharel Aff. ¶ 6.

Immediately after Ms. Gurung escaped, she was paralyzed by fear and would not even go

outside.  Gurung Aff. ¶ 46.  Ms. Gurung remains extremely scared of the Malhotras and the authorities.  *Id.*  ¶¶ 43, 51; Ranjit Aff. ¶¶ 21, 26; Pokharel Aff. ¶ 16.  She believes that the Malhotras' power and influence could convince authorities to arrest and deport Ms. Gurung. Gurung Aff. ¶ 51; Ranjit Aff. ¶ 26.  Ms. Gurung still refuses to enter the Malhotras' neighborhood, fearful of being seen by someone who lived in their building.  Gurung Aff. ¶ 51; Ranjit Aff. ¶ 21.  At night, Ms. Gurung suffers from frightening nightmares.  Pokharel Aff. ¶ 16.; Gurung Aff. ¶ 50.

Ms. Gurung still fears that the police will beat and rape her, as the Malhotras told her they would.  Gurung Aff. ¶ 33.  Even today, whenever Ms. Gurung sees the police or hears a siren, she becomes nervous and shaky.  *Id.* ¶¶ 42-43; Pokharel Aff. ¶ 16.  Ms. Gurung cannot will herself to make eye contact with the police, moving to the edge of the sidewalk to avoid them completely.  Gurung Aff. ¶ 43.

When discussing her time at the Malhotras, Ms. Gurung often cries and becomes distressed.  Gurung Aff. ¶ 52; Ranjit Aff. ¶ 28.  Ms. Gurung also gets upset and emotional when she hears stories of other individuals who have been enslaved.  Yonjon Aff. ¶ 6.

## ARGUMENT

### I.  DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER FEDERAL AND STATE WAGE AND HOUR LAWS

**A.  Defendants are jointly and severally liable under the FLSA and NYLL.**

Defendants are each liable for their failure to pay wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  *See* Compl. ¶¶ 2, 37-38, 77, 83; Gurung Aff. ¶¶ 2, 5, 35; 29 U.S.C. § 203(d); N.Y. Lab. Law § 2(5).

**B.  Plaintiff has established the elements of each FLSA and NYLL claim, including damages.**

In the absence of any contemporaneous employment records from defendants, which the law requires they maintain, the Court may rely on Ms. Gurung's own testimony and the reasonable inferences drawn from it, to reconstruct her approximate hours and earnings. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) ("If the employer fails to produce such evidence [of the hours worked and the wages paid], the court may then award damages to the employee, even though the result be only approximate."); *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1995) ("[W]hen an employer fails to keep adequate records . . . employees seeking recovery for overdue wages will not be penalized . . . . [T]he burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence") (internal citations omitted).

### 1.    Federal Minimum Wage

Under the FLSA, Ms. Gurung was entitled to be paid at least the federal minimum wage for every hour worked. 29 U.S.C. § 206 (2006).[1]   However, where the state minimum wage is higher than the federal minimum wage, employers are required to pay employees at the state minimum wage under both their federal and state law minimum wage claims.[2] *Id.* at § 218(a); *see Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010) ("The federal minimum wage is intended to be a floor, not a ceiling on the amount an employee is entitled to received. . . . Accordingly, the higher of the

---

[1]  The federal minimum wage was $5.15 per hour between March 29, 2006 and July 23, 2007, $5.85 per hour between July 24, 2007 and July 23, 2008, $6.55 per hour between July 24, 2008 and July 23, 2009, and $7.25 per hour since July 24, 2009. *See* 29 U.S.C. § 206(a)(1).

[2]  The New York state minimum wage was $6.75 per hour between January 1, 2006 and December 31, 2006, $7.15 per hour between January 1, 2007 and July 23, 2009, and $7.25 per hour since July 24, 2009. *See* N.Y. Lab. Law § 652 (McKinney 2011).

FLSA or the Labor Law minimum wage level shall be used to calculate plaintiffs' damages for unpaid wages and overtime under the FLSA and the Labor Law"); *Dong v. CCW Fashion, Inc.*, Nos. 06 Civ. 4973 (LAP)(DFE), 07 Civ. 9741 (LAP)(DFE), 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) ("Pursuant to 29 U.S.C. § 218(a), the higher New York State minimum wage rate applied to plaintiff's 2005 employment").

During the relevant time period of Ms. Gurung's employment, the state minimum wage was always higher than the federal minimum wage. Defendants never paid any wages to Ms. Gurung during the forty-month period that she was employed by them. *See* Compl. ¶¶ 2, 37; Gurung Aff. ¶ 35. The only payment she ever received was a one-time payment of 5,500 rupees, the equivalent of approximately US$120. *See* Compl. ¶¶ 2, 37. Defaulting defendants have conceded that they failed to pay Gurung wages for working approximately eighty-four hours per week from approximately March 2006 through May 2006, and approximately 112 hours per week from June 2006 through July 2009. *See* Compl. ¶¶ 18, 20-21, 37, 42. Accordingly, defendants owe Gurung $135,720[3] in damages for their failure to pay her the federal minimum wage. *See* Declaration of Amy Tai ("Tai Decl."), dated December 21, 2010, Ex. 1.

### 2.    New York State Minimum Wage

Under the NYLL, Ms. Gurung was entitled to be paid at least the state minimum wage for every hour worked. *See* N.Y. Lab. Law § 652(1) (McKinney 2011). It is undisputed that Ms. Gurung worked between approximately 84 and 112 hours per week for the Defendants, and that Defendants never paid her any wages. *See* Compl. ¶¶ 20-21. Accordingly, Ms. Gurung is entitled to $135,720 in damages for the Defendants' failure to pay her the state minimum wage.

---

3  The minimum wage damages account for the one-time payment of US$120.

*See* Tai Decl., Ex. 1.

### 3. Additional New York State Unpaid Wages

Moreover, under NYLL § 191, an employee "shall be paid the wages earned in accordance with the agreed terms of employment."  N.Y. Lab. Law § 191(1) (McKinney 2011).  Thus, where the hourly wage promised to Ms. Gurung exceeds the federal or state minimum wage, Ms. Gurung is entitled to the higher rate of pay.  *See Kang v. Inno Asset Dev., LLC*, No. 08-CV-4848 (SLT)(JMA), 2011 WL 1674554, at *3 (E.D.N.Y. Jan. 28, 2011) ("NYLL entitles a successful plaintiff to collect the amount of wages contractually owed, not just the statutory minimum wage for the hours worked"); *Shim v. Millennium Grp.*, 08-CV-4022, 2009 U.S. Dist. LEXIS 124107, at *4-5 (E.D.N.Y. Oct. 2, 2009) ("NYLL fully compensates a plaintiff for all unpaid straight-time wages.  This distinction [between NYLL and FLSA] is normally not an issue, as actions for unpaid wages generally involve unpaid compensation *below* the minimum wage threshold, rather than above it.") (emphasis in original).  As stated in the employment contract provided to the U.S. Department of State, the Defendants promised Ms. Gurung "wages at the prevailing hourly rates of no less than US$7 per hour."  Grysman Affirm., Ex. 2.  Moreover, as set forth in the U.S. Department of State's Foreign Affairs Manual, an employer is required to include in an employment contract for an A-3 worker—which Ms. Gurung was—"[a] guarantee the employee will be compensated at the State or Federal minimum or prevailing wage, whichever is greater."  9 U.S. Dep't of State, Foreign Affairs Manual § 41.21 N.6.2(a)(2), *available at* http://www.state.gov/m/a/dir/regs/fam/ ("FAM").

The prevailing wage in New York County for "maids and housecleaning keepers" during the relevant time period that Ms. Gurung was employed by the Malhotras was between $9.47 and

$10.23.[4]  Grysman Affirm., Ex. 3 (Foreign Labor Certification Data Center Information).

Accordingly, in addition to the minimum wage, Ms. Gurung is entitled to $49,945 in unpaid

wages, which is the difference between the prevailing wage and minimum wage as agreed upon

in her employment contract.  *See* Grysman Affirm., Ex. 2; *see also* Tai Decl., Ex. 2.

### 4.   New York State Overtime

Under the NYLL, Ms. Gurung was entitled to at least one and one-half times the

minimum wage for each hour worked over forty-four hours per week.  *See* N.Y. Lab. Law § 170

(McKinney 2010) (amended 2011).  Defendants have conceded that Ms. Gurung worked

between 40 and 68 overtime hours per week during the course of her employment with them and

never paid her overtime.  *See* Compl. ¶¶ 20-21.  Accordingly, Defendants owe Ms. Gurung

$40,898 in overtime damages under the NYLL.  *See* Tai Decl., Ex. 1.

### 5.   NYLL Spread of Hours

NYLL includes a requirement that an employee who works over ten hours per day

receive an additional hour at the minimum wage.  *See* N.Y. Comp. Code R. & Regs. tit. 12 §

142-2.4 (McKinney 2011).  The "spread of hours" is the length of the time from the beginning to

the end of an employee's workday.  *See id.* § 142-2.18.  It is undisputed that Ms. Gurung worked

seven days per week between twelve and sixteen hours per day, but was never paid this spread-

of-hours pay.  *See* Compl. ¶¶ 20-21.  Thus, Ms. Gurung is entitled to spread of hours damages in

the amount of $8,598.  *See* Tai Decl., Ex. 1.

### C.   Defendants' violations of the FLSA and NYLL were willful.

---

[4] During the relevant employment period, the prevailing wage was $9.74 from March 29, 2006
to June 30, 2006; $9.47 from July 1, 2006 to June 30, 2007; $9.59 from July 1, 2007 to June
30, 2008, $9.86 from July 1, 2009 to July 23, 2009; and $10.23 beginning July 1, 2009.
Grysman Affirm., Ex. 3.

Defendants' violations of the FLSA and NYLL were willful.[5]  Under the FLSA, the standard for determining willfulness is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe*, 486 U.S. 128, 133 (1988); *see also Herman v. RSR Sex. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999).  An employer acts "willfully" under the NYLL if it "knowingly, deliberately, [or] voluntarily disregards its obligation to pay wages." *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (quoting *P&L Grp., Inc. v. Garfinkel*, 150 A.D.2d 663, 664, 541 N.Y.S. 2d 535, 537 (2d Dep't 1989)).  Ms. Gurung need not prove that defendants acted maliciously or in bad faith.  *Id.*

Here, the Defendants clearly acted willfully.  Defendants had explicit knowledge of the federal and state labor laws.  In order for Defendants to obtain an A-3 visa for Ms. Gurung, they were required to provide the U.S. government with an employment contract between them and Ms. Gurung "to demonstrate that the employee will receive a fair wage, and that the employee

---

[5] The statute of limitations for violations of FLSA is three years if the violation was willful.  29 U.S.C. § 255(a).  In Ms. Gurung's complaint filed on July 1, 2010, she sought damages under the FLSA for the entire period that she was employed by the Defendants: March 29, 2006 through July 28, 2009.  Because a statute of limitations defense is an affirmative defense, Defendants have waived any such defense as a result of their failure to file an answer or otherwise respond to Plaintiff's Complaint.  *See Fisher v. Vassar Coll.*, 70 F.3d 1420, 1452 (2d Cir. 1995) ("[T]he statute of limitations is an affirmative defense and can be waived.").  Thus, Ms. Gurung is entitled to FLSA damages for the entire period sought in the Complaint.  The statute of limitations for NYLL claims is six years.  *See* N.Y. Lab. Law §§ 198(3), 663(3) (McKinney 2011).  Plaintiff's NYLL claims fall within the statute of limitations.  To the extent that the Court finds that a portion of Ms. Gurung's claim is untimely under the federal three-year statute of limitations but timely under the state six-year statute of limitations, the state claim is operative.  *Rios. v. Neighborhood Constr. Corp.*, No. 07 Civ. 8701 (LTS), 2009 WL 3335354, at *1 n.2 (S.D.N.Y. Oct. 14, 2009) ("For the period that is untimely under the federal three-year statute of limitations but timely under the state law six-year statute of limitations, the state law claim is operative"); *see also Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 450 n.1 (E.D.N.Y. 2007).

understands his or her duties and rights regarding salary and working conditions." 9 FAM 41.22

N4.4(a); *see* 8 U.S.C. §1375c(b)(2) (requiring an employment contract whereby the employer

agrees to abide by all "Federal, State and local laws in the United States"). In addition the

"contract must state the hourly wage to be paid the domestic employee . . . . [which] must be the

greater of the minimum wage under U.S. Federal and state law or the prevailing wage for all

working hours." 9 FAM 41.22 N4.4(b)(3). Defendants were also required to state in the contract

that overtime work "must be paid as required by U.S. local laws." 9 FAM 41.22 N4.4(b)(4).

Defendants asked Ms. Gurung to sign paperwork written in English, which Ms. Gurung could

not understand, and did not explain the content of the documents to her or provide her with a

copy. *See* Gurung Aff. ¶ 9. Ms. Gurung was able to subpoena the contract from the U.S.

Department of State. *See* Grysman Affirm., Ex. 2.

Ms. Gurung also repeatedly requested her earned wages from Defendants, but her

demands were unsuccessful. *See* Compl. ¶ 38; Gurung Aff. ¶ 35. Thus, Defendants knew that

they should have paid Ms. Gurung according to the federal and state labor laws, yet willfully and

knowingly refused to pay her any wages. Certainly, Defendants did not articulate, nor could they

articulate, a good faith basis for failing to pay Ms. Gurung the minimum wage, or any wages for

that matter.

### D.      Liquidated Damages

Both the FLSA and NYLL provide for liquidated damages in addition to reimbursement

of unpaid wages. The Complaint explicitly seeks liquidated damages for all wage claims. *See*

Comp. ¶¶ 80, 86, 95, 101, 106, and Prayer for Relief.

An employer who violates the FLSA is liable to an employee for unpaid wages and an

additional, equal amount in liquidated damages. 29 U.S.C. § 216(b) (2006). "The employer

14

bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman*, 172 F.3d at 142. Because the Defendants did not respond to the Complaint, they have failed to meet their burden of proving good faith and double damages of $135,720 must be awarded under the FLSA, 29 U.S.C. § 216(b). *See* Tai Decl., Ex. 1.

Under NYLL, Ms. Gurung is entitled to recover an additional 25 percent of her full unpaid wages as liquidated damages if she is able to show that the employer's failure to comply with the minimum wage, overtime, spread of hours, and other unpaid wages was willful. *See* N.Y. Lab. Law §§ 198(1-a), 663(1). No finding of malice or bad faith is necessary. *Ayres,* 12 F. Supp. 2d at 309. As set forth above, Defendants' failure to pay wages was willful because they knowingly, deliberately, and voluntarily disregarded such obligations. Thus, Ms. Gurung is entitled to the New York state liquidated damages of 25 percent of all her NYLL claims, which is equivalent to $58,820. *See* Tai Decl., Ex. 1.

Ms. Gurung can recover liquidated damages simultaneously under the FLSA and state law because they two serve different purposes: liquidated damages under FLSA are compensatory, while those under New York law are punitive. *See Cao*, 2010 WL 4159391, at *5 ("Because liquidated damages under the FLSA and the Labor Law serve fundamentally different purposes, a plaintiff may recover liquidated damages under both FLSA and the Labor Law"); *Maliza v. 2001 MAR-OS Fashion*, No. CV-07-463 (ERK)(VVP), 2010 WL 502955 (E.D.N.Y. Feb. 10, 2010); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008) ("Since [liquidated damages under federal law and New York law] serve different purposes, plaintiffs may recover both."); *Reich*, 121 F.3d at 71 ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature."). *But see Fu v. Pop Art Int'l Inc.*, No. 10 Civ.

15

8562, 2011 WL 4552436, at *4 (S.D.N.Y. Sept. 19, 2011) (adopting the minority view and electing against allowing punitive damages under both FLSA and NYLL despite "[m]ost courts in this Circuit hold[ing] that a plaintiff may recover both forms of liquidated damages"). Thus, Ms. Gurung can recover liquidated damages under both the FLSA and the NYLL, for a total of $194,540.

### E.    NY Prejudgment Interest

Ms. Gurung is entitled to prejudgment interest at nine percent per annum on all state claims that are not duplicative of federal law. N.Y. C.P.L.R. §§ 5001-04 (McKinney 2011). Prejudgment interest is still appropriate even when a plaintiff receives liquidated damages under NYLL. *See Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071 (SAS)(AJP), 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009) ("The Second Circuit has held that even where a plaintiff is awarded liquidated damages under New York Labor Law, prejudgment interest still is appropriate."). Plaintiffs' interest damages are calculated based on a midpoint. *See* N.Y. C.P.L.R. § 5001(b); *Liu v. Jen Chu Fashion Corp.*, No. 00 Civ. 4221 RJH AJP, 2004 WL 33412, at *5-6 (S.D.N.Y. Jan. 7, 2004) (approving calculation of interest based on the midpoint of accrual). Accordingly, Defendants owe Ms. Gurung $36,076 in prejudgment interest as statutorily permitted under New York law. *See* Tai Decl., Ex. 1.

## II.    PLAINTIFF IS ENTITLED TO DAMAGES FOR DEFENDANTS' VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIATION ACT

Plaintiff pleaded several claims under federal statutes that protect the victims of human trafficking. Specifically, Plaintiff is entitled to damages under 18 U.S.C. §§ 1584 (involuntary servitude), 1589 (forced labor), 1590 (trafficking), and 1592 (unlawful conduct with respect to documents). Ms. Gurung seeks damages for her loss of liberty, loss of earning potential, any physical injuries, and emotional distress. Ms. Gurung also seeks punitive damages.

Attached as Exhibit 4 to the Affirmation of Sharon Grysman is a table representing the

verdicts of cases where liability has been established under the aforementioned statutes.  In *Pena*

*Canal v. de la Rosa Dann*, No. 09-03366 (CW), 2010 U.S. Dist. LEXIS 97856 (N.D. Cal. Sept.

2, 2010), the plaintiff worked for almost two years for the defendants as a domestic servant,

cooking, cleaning, and caring for children.  Among the plaintiff's claims were that of forced

labor and unlawful use of documents in furtherance of servitude under the Trafficking Victims

Protection Act.  There the Court awarded a total award of $618,812.92, which included $92,400

in emotional distress and $309,406.41 in punitive damages.  In *Mazengo v. Mzengi*, Civ. No. 07-

756 (RMC)(AK), 2007 U.S. Dist. LEXIS 99377 (D.D.C. Dec. 20, 2007), the court awarded

damages and attorneys' fees in the amount of $1,059,348.79.  The Plaintiff had agreed to

perform "normal household work" and child care at the rate of $900 per month.  The Plaintiff

worked approximately 17 hour days, 7 days a week for a little over four years.  The Plaintiff was

never paid, her passport was confiscated and she endured emotional and psychological abuse.

Plaintiff's claims included violations of forced labor and trafficking.  The damages award

included $250,000 in compensatory damages for emotional distress, $150,000 in punitive

damages and $84,036.25 in attorney's fees.

## III.    PLAINTIFF IS ENTITLED TO DAMAGES FOR HER COMMON LAW CLAIMS

### A.    Emotional Distress

Although comparable approved awards from similar cases may serve as guideposts for

determining reasonable compensation under New York law, because each plaintiff's factual

circumstances differ, present and future pain and suffering claims are unique and "each case

must be viewed in the perspective cast by its unique facts."  *Aviles v. Q.P.N. Prods., Inc.*, CV-

05-2830 (CBA)(JMA), 2006 U.S. Dist. LEXIS 63327, at *7-9 (E.D.N.Y. Sept. 6, 2006) (internal

citations and quotation marks omitted); *see also Rodriguez v. United States*, No. 81 Civ. 7628

(CBM), 1986 U.S. Dist. LEXIS 23899WL 15718, at *17-18 ( S.D.N.Y. June 20, 1986) (same); *Caron v. United States*, 410 F. Supp. 378, 395 (D.R.I. 1975) ("[T]he strictures of reasonableness, good sense, nature of the injuries, length of the suffering and the eschewal of sentimentality are guides which assist in determining a fair award").   Moreover, "[u]nder New York law, no precise rule has been formulated, either to measure the pain or to compensate for it in money damages." *Aviles,* 2006 U.S. Dist LEXIS 63327, at *10.   That said, courts, in the context of employment discrimination, have valued egregious claims of emotional distress, which involve conduct that is "outrageous and shocking or where the physical health of plaintiff was significantly affected," in excess of $100,000.  *See Moore v. Houlihan's Rest., Inc.*, 07-CV-03129 (ENV) (RER), 2011 U.S. Dist. LEXIS 64452, at *22-23 (E.D.N.Y. May 10, 2011) (internal citation omitted) (applying this approach to both jury verdicts and inquest hearings).[6] For the Court's reference, attached as Exhibit 5 to the Grysman Affirmation is a chart depicting emotional distress damages awards from comparable cases.

### 1.    Intentional Infliction of Emotional Distress

Damages for a valid claim of intentional infliction of emotional distress compensate for

---

[6] Even "garden variety" claims of emotional distress, though devoid of physical manifestation or any medical treatment can range as high as $125,000.  *See Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (quoting *Quinby v. WestLB AG,* 04 Civ. 7406, 2008 WL 3826695 at *3 (S.D.N.Y. Aug. 15, 2008) (recognizing a trend that more recent cases find the range for garden variety damages to be significantly higher, between $30,000 to $125,000); *see also Watson v. E.S. Sutton Inc.*, 02 Civ. 2739, 2005 WL 2170659, at *16 (S.D.N.Y. Sept. 6, 2005) (awarding $120,000 for garden variety emotional distress claims).  Indeed, the Second Circuit recognized that New York courts "uphold awards of more than $100,000 without discussion of protracted suffering, truly egregious conduct, or medical treatment."  *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 78 (2d Cir. 2004) (upholding garden variety damages of $125,000), *vacated on other grounds*, *KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005).

mental pain and anguish from humiliation, indignation, severe disappointment, wounded pride, despair, anxiety, stress, depression, fright, as well as for any physical or bodily harm attributable to the defendants' actions.  Restatement (Second) of Torts § 46(1) & cmt. j (1965); *see* Grysman Affirm., Ex. 5 (Chart of emotional distress awards from comparable cases).  The Malhotras' intentional conduct toward Ms. Gurung included threats, physical and verbal abuse, lies regarding potential abuse and deportation by American authorities, extreme and inhumane working and living conditions, starvation, confinement and isolation from outside contact, failure to pay wages, and confiscation of her passport and other important identification documents. Defendants intentionally behaved in such a manner in order to intimidate and subjugate Plaintiff, all the while exploiting her labor, young age, vulnerability, and lack of familiarity with her surroundings.  As a direct result, Ms. Gurung suffered, and continues to suffer, severe emotional distress including humiliation, embarrassment, fear, nightmares, and sleep loss.  Ms. Gurung also suffered, and continues to suffer, physical manifestations of the emotional distress, including extreme weight loss, headaches, stomach aches, fainting spells, and hospital visits in connection thereto.

Furthermore, "compensatory damages for intentional infliction of emotional distress 'include compensation for the injury itself, conscious pain and suffering including mental and emotional anxiety which can be based on the *plaintiff's subjective testimony.*'"  *Ahrens v. Stalzer*, No. 17791/01, 791 N.Y.S.2d 867, 4 Misc.3d 1013(A), at *6-7 (N.Y. Dist. Ct. 2004) (emphasis added) (internal citations omitted); *see also Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52-56, 559 N.Y.S.2d 336, 339 (2d Dep't 1990) ("The plaintiff's subjective testimony of pain may be sufficient to establish an injury for which he or she is entitled to some compensation . . . .").

### 2.    Negligent Infliction of Emotional Distress

In the alternative, Plaintiff is entitled to recover damages under the tort of negligent infliction of emotional distress.  The Defendants' utter lack of reasonable care in their treatment of Ms. Gurung is laid bare by the facts adduced supra, thereby providing "evidence sufficient to guarantee the genuineness of the claim."  *Garcia v. Lawrence Hosp.,* 5 A.D.3d 227, 228, 773 N.Y.S.2d 59, 60 (1st Dep't 2004); *see also Luna v. Am. Airlines*, 676 F. Supp. 2d 192, 204-05, 208 (S.D.N.Y. 2009).  Additionally, such "guarantees of genuineness" do not require actual physical injury in order for the claim to be compensable.  *See Luna*, 676 F. Supp. 2d at 204-05; *see also* 1-241 Warren's Negligence in New York Courts § 241.03,¶ [3][b] ("In New York . . . a plaintiff need only prove to the satisfaction of the finder of fact that the psychic injuries were substantial, proximately caused by the defendant's conduct, and most importantly, that the injuries were genuine.").

In *Peters v. Rome City School District*, 298 A.D.2d 864, 747 N.Y.S.2d 867 (4th Dep't 2002, the plaintiff received an award of $75,000 for negligent infliction of emotional distress when his teacher placed him in a "time out" room seventy-five times over the course of five months, and he was not permitted to leave unless he sat upright for at least three consecutive minutes.  298 A.D.2d at 864-66, 747 N.Y.S.2d at 868-69.  By contrast, Ms. Gurung was forced to remain a virtual prisoner in the Defendants' home for over three years, suffering indignities at every turn on a daily basis.

### B.    Assault

As assault does not require a battery to compensate the plaintiff, the law permits the jury to assess damages for the endured insult and indignity, the hurt feelings, and the fright caused. *Halio v. Lurie*, 15 A.D.2d 62, 65-66, 222 N.Y.S.2d 759, 762-63 (2d Dep't 1961).  The plaintiff is

not only entitled to damages to compensate for past pain and suffering, but future pain and suffering as well. *Thompson v. Hickey*, 283 A.D.2d 939, 940, 724 N.Y.S.2d 241, 242 (4th Dep't 2011).

Ms. Gurung was constantly placed in fear of being struck by the Defendants personally or by items they might throw, as Mr. Malhotra would often hover over Ms. Gurung in an enraged state shaking his fists in close proximity to her. Ms. Malhotra would also drag Ms. Gurung from room to room in the apartment when she became angry at Ms. Gurung, often leaving nail marks and bruises on her arms. Finally, the Defendants often threatened to throw food on Ms. Gurung's head when unsatisfied with her cooking. The Defendants' behavior caused Ms. Gurung great fear and indignity on a daily basis.

### C.    False Imprisonment

When assessing damages for a claim of false imprisonment, courts consider not only physical injuries, but also "the indignities sustained by claimants, the attendant embarrassment to each of them, [and] their stations in life." *Robey v. State of N. Y.*, 351 N.Y.S.2d 788, 797 (N.Y. Ct. Cl. 1973). For example, in *O'Donnell v. K-Mart Corp.*, 100 A.D. 488, 474 N.Y.S.2d 344 (4th Dep't 1984), the defendants taunted the plaintiff before falsely imprisoning him for mere minutes. The court awarded the plaintiff $35,000, noting that that mental suffering, namely the gross indignity and public humiliation the plaintiff suffered, constituted the bulk of the award. 100 A.D.2d at 492, 474 N.Y.S.2d at 347; *see also Bert v. Port Auth. of N.Y.*, 166 A.D.2d 351, 352, 561 N.Y.S.2d 416 (1st Dep't 1990) (affirming a $100,000 award where the defendants detained plaintiff for three-and-a-half hours and humiliated him). In *Kajtazi v. Kajtazi*, 488 F. Supp. 15 (E.D.N.Y. 1978), the court explained that, "compensatory damages may be based upon the period of unlawful detention itself" and, "one falsely imprisoned is entitled to damages for

the false imprisonment itself." 488 F. Supp. at 19.  As such, the Court held that the infant

plaintiff was entitled to recover: (1) $20 a day for each day the infant was falsely imprisoned; (2)

$5,000 for the false imprisonment itself; and (3) $50,000 in punitive damages because the act of

false imprisonment was deemed intentional and malicious. *Id.* at 19-20.

Defendants intentionally confined Ms. Gurung as they refused her requests to leave the

apartment and refused her requests for her passport.  The Defendants lied to Ms. Gurung about

U.S. law enforcement, claiming that the police would arrest, rape, and beat her if they ever

caught her, all in an attempt to discourage Plaintiff's egress from the apartment.  Ms. Gurung

was acutely aware of her confinement, and often cried due to the trauma of her isolation.  Ms.

Gurung's lengthy confinement caused her to suffer emotional distress, embarrassment,

humiliation, and physical manifestations of such distress, including lack of sleep, headaches,

stomach pains, and weight loss.

### D.    Fraud

Ms. Gurung was lured to the United States with the false promise of fair wages for light

housework.  Ms. Gurung was offered "wages at the prevailing hourly rates[7] of no less than US$7

per hour" to be paid monthly with specified paid vacation days, holidays, and sick days.  *See*

Grysman Affirm., Ex. 2.

Under the "out-of-pocket" rule, which provides the measure of damages for fraud, "the

loss is computed by ascertaining the difference between the value of the bargain which a plaintiff

was induced by fraud to make and the amount or value of the consideration exacted as the price

of the bargain." *Cyberlease, LLC v. JP Morgan Chase Bank*, No. 04 Civ. 1221 (NRB), 2005

---

[7]  *See* Exhibit 3 of the Grysman Affirmation for prevailing hourly rates. As explained under
     Section I supra, plaintiff seeks to recover the prevailing hourly rates as stated in the contract.

U.S. Dist. LEXIS 17639, at *24 (S.D.N.Y. Aug. 22, 2005) (quoting *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)) (internal citation and quotation marks omitted).  As calculated supra, Ms. Gurung seeks to recover her unpaid wages.

   In addition to the monetary loss Ms. Gurung sustained, Ms. Gurung seeks to recover damages for the maltreatment she suffered at the hands of Defendants.   As found by the Court in *Perricone v. Success Motivation Inst.*, No. 79 Civ. 5125 (WCC), 1982 U.S. Dist. LEXIS 12156 (S.D.N.Y. Apr. 7, 1982), "pecuniary loss is by no means the limit of damage . . . . The plaintiff . . . may have the jury consider as bearing upon the question of damage the fact that she has . . . suffered humiliation, disgrace, and mental anguish." 1982 U.S. Dist. LEXIS 12156, at *12, 14-15 (internal quotations and citations omitted).  Thus, when the defendant's conduct goes well "beyond all reasonable bounds of decency," rising to a level of "being outrageous or intolerable," the plaintiff will be entitled to compensation for mental anguish in excess of pecuniary harm suffered; "[w]hat [those] damages are, or should be, must rest very largely in the discretion of the jury, but these are elements which they may consider in arriving at the amount." *Perricone*, 1982 U.S. Dist. LEXIS 12156, at *15-16 (internal quotations and citations omitted).

   Ms. Gurung was made to sleep on the floor of the living room for the vast majority of her time at the Malhotras, was not allowed to leave the apartment of her own free will, and was constantly berated and threatened by the Defendants, all contributing to the great shame and mental suffering that she still continues to suffer to this day.  As such, the mistreatment caused by the Defendants warrant an award of fraud damages and punitive damages.

   **E.    Conversion**

   Upon the issuance of Ms. Gurung's travel documents, Ms. Malhotra promptly and wrongfully confiscated Plaintiff's passport and visa, and retained such property under lock and

key in her personal bedroom.  In spite of Ms. Gurung's repeated requests for the return of the property, Defendants continued to exercise dominion over the documents without Plaintiff's authorization and to the exclusion of her ownership rights.  The measure of damages for conversion is the fair value of the property at the time of conversion, plus interest.  *Citizens Nat'l Bank v. Osetek*, 353 F. Supp. 958, 964 (S.D.N.Y. 1973).  In a similar claim in which the merits were not reached, plaintiff sought the return of her passport, birth certificate, and other official documents, or, in the alternative, to recover $25,000.  *See Yaron v. Yaron*, 84 Misc. 2d 644, 645-46, 378 N.Y.S.2d 285, 286 (Sup. Ct. N.Y. Cnty. 1975).

**F.    Contract Claims**

As an alternative to full recovery under her contract, Plaintiff asserts the following claims for damages.

**1.    Promissory Estoppel**

When seeking to recover damages under a theory of promissory estoppel, a court may award any of expectation, reliance, or restitution damages.  *See Clifford R. Gray, Inc. v. LeChase Constr. Servs. LLC*, 51 A.D.3d 1169, 1170-71, 857 N.Y.S.2d 347, 349-50 (3d Dep't 2008); *see also* Restatement (Second) of Contracts § 90 cmt. d (1981) ("full-scale enforcement by normal remedies is often appropriate").  Defendants made a clear promise in the contract that Ms. Malhotra signed to pay the prevailing wage to Plaintiff of not less than US$7 per hour.  It was reasonable for Ms. Gurung to rely on the Defendants' promises, as she was even instructed by Ms. Malhotra to state her wages to American officials as US$7 per hour when applying for a visa from the United States.  Ms. Gurung seeks full expectation damages in line with the promises made to her, as evidenced by her contract with the Defendants.

**2.    Quantum Meruit and Unjust Enrichment**

24

As a further alternative, Plaintiff is entitled to recovery under the equitable doctrines of quantum meruit and unjust enrichment, which are two sides of the same coin.  As explained supra, Ms. Gurung conveyed over three years of domestic labor to the Defendants in good faith and in expectation of full compensation.  The Malhotras unjustly benefited from Ms. Gurung's labor and this uncompensated benefit must be disgorged.  Moreover, while the "reasonable value of the benefit unjustly received, not the contract price, determines the amount of an award in restitution[.] . . . the contract may provide probative evidence of the value of the benefit." *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 730 (2d Cir. 1992); *see also Frank v. Feiss*, 266 A.D.2d 825, 826, 698 N.Y.S.2d 363, 364 (4th Dep't 1999) (stating that an agreement between the parties can furnish the reasonable value of the plaintiff's services rendered).

## IV.     PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES ON THE TVPRA AND TORT CLAIMS

Ms. Gurung is entitled to punitive damages under both federal and state law as a result of the Malhotra's outrageous, reckless, and morally culpable actions.

Punitive damages are available for Ms. Gurung's New York tort claims.  Courts will typically hold that punitive damages are recoverable in cases where the "wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but [also] to deter him." *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961); *see also Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 613-14 (1994).  Additionally, when individuals of power and authority "wantonly misuse their authority," courts are more inclined to uphold awards of punitive damages. *Laurie M. v. Jeffrey T.M.,* 159 A.D.2d 52, 59, 559 N.Y.S.2d 336, 340 (2d Dep't 1990).  In false imprisonment cases, punitive damages will only be assessed if the defendant acted with malice, or the defendant's conduct is clearly morally culpable and actuated with evil and reprehensible motives. *O'Donnell v. K-Mart Corp.*,100 A.D.2d 488, 490

(4th Dep't 1984). Similarly, in conversion cases, courts have awarded punitive damages where the circumstances show that the conversion was accompanied by malice, insult, reckless and willful disregard of the plaintiff's rights, or other proof showing the aggravated nature of the act. *See, e.g., Ashare v. Mirkin, Barre, Saltzstein & Gordon, P.C.,* 106 Misc. 2d 866, 869-70, 435 N.Y.S.2d 438, 441-42 (Sup. Ct. Suffolk Cnty. 1980).

Additionally, Ms. Gurung's TVPRA claims support an award of punitive damages. Section 1595 of the TVPRA authorizes a victim of human trafficking to bring a "civil action" against the perpetrator. *See* 18 U.S.C. § 1595(a). The TVPRA is silent with regard to what remedies are available to a human trafficking victim. However, the Supreme Court has repeatedly stated that courts should "presume the availability of all appropriate remedies, unless Congress has expressly indicated otherwise." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 66 (1992); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done"). The Defendants' violations of the TVPRA also amount to actions that are "morally culpable, or [] actuated by evil and reprehensible motives." *Sheldon*, 10 N.Y.2d at 404.

An award of punitive damages is justified in this case. The evidence clearly shows that the Malhotras acted with a conscious disregard for Ms. Gurung's well-being. The Malhotras acted with "evil motive or intent" and with the reckless indifference to Ms. Gurung's federally protected rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983). The Malhotras forced Ms. Gurung to work as their domestic servant for virtually no pay and under deplorable conditions. Ms. Gurung suffered physically, psychologically, and emotionally from the constant abuse and terror inflicted by the Defendants.

Punitive damages have been awarded in comparable cases alleging federal claims under the TVPRA.[8]  In the *Mzengi* case, the plaintiff was lured to the United States from Tanzania on the promise of fair wages, eight hour days, vacation time and health care benefits.  2007 U.S. Dist. LEXIS 99377, at *24.  The plaintiff's passport was seized and the court believed that there was no evidence that the defendants "ever intended to honor" their promises.  *Id.* at *25.  The court found that the defendants' actions supported an award of $150,000 in punitive damages.  *Id.* In *Licea v. Curacao Drydock Co., Inc.*, plaintiffs sought compensatory and punitive damages against the Defendant for violations of forced labor.  584 F. Supp. 2d 1355, 1356 (S.D. Fla. 2008).  The defendant company had benefited from a forced labor scheme for 15 years.  *Id.*  In determining punitive damages, the court considered, among other things, the Defendant's role in a trafficking conspiracy that was targeted at impeding U.S. policy, the deterrent effect of punitive damages, and that the Defendants had profited significantly.  *Id.* at 1366.  The court awarded $10 million in punitive damages per plaintiff.  *Id.*  Additionally, in *Pena Canal*, the court found that the Plaintiff was entitled to punitive damages under various state and federal claims. The court found that the defendant had "acted with a conscious disregard for [Plaintiff's] right to be free from involuntary servitude and . . . intentionally misrepresented facts for the purpose of depriving her of this right."  2010 U.S. Dist. LEXIS 97856, at *11.  The court determined punitive damages as being "an amount equal to her compensatory damages."  *Id.*

## V.   ATTORNEYS' FEES AND COSTS

Finally, Ms. Gurung may also seek her reasonable attorneys' fees and costs incurred in the prosecution of this action as it relates to her trafficking claims, and federal and state labor law

---

8  *See* Grysman Affirm., Ex. 4 (Chart of Damages Awards from Trafficking Cases).

claims.  18 U.S.C. § 1595(a) (permitting a trafficking victim to seek reasonable attorneys' fees);

29 U.S.C. § 216(b) (dictating that the defendant is liable to prevailing party for attorneys' fees

and costs under FLSA); N.Y. Lab. Law §§ 198(1-a), 663(1).  Pursuant to Section 663 of the New

York Labor Law,

> In any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorney's fees and costs incurred in enforcing any court judgment. ***Any judgment or court order awarding remedies under this section shall provide*** that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment ***shall automatically increase by fifteen percent***.

N.Y. Lab. Law § 198 (4) (emphasis added); *see also* N.Y. Lab. Law § 663(4).

Ms. Gurung seeks $24,469.97 in costs, which are set forth in the Declaration of Mitchell

Karlan and attached summary of costs.  *See* Declaration of Mitchell Karlan ("Karlan Decl."),

dated December 22, 2011¶¶ 5, 48; Ex. 1.  A substantial portion of the costs were spent on

serving the Defendants in India.  Such service of process was complex and necessary in order to

serve the Defendants.  *See id.*

Plaintiff's co-counsel, Gibson Dunn & Crutcher LLP ("Gibson Dunn") and Urban Justice

Center ("UJC"), bring a wealth of experience and an appropriate level of expertise to handle the

variety of tasks required.  The tasks performed by Gibson Dunn and UJC at each stage of this

matter are described in the accompanying affidavits of Mitchell Karlan and Amy Tai, along with

daily time entries.  *See* Karlan Decl. ¶¶8-28, 47 and Ex. 1; Tai Decl., Ex. 2.  As described in

more detail in the attorney declarations and their time entries, throughout the year and a half that

this matter has been active, all counsel involved in representing Plaintiff have expended

considerable time and effort in developing the facts of this case by meeting with the Plaintiff

(typically with the assistance of an English-Nepali interpreter), conducting legal research,

drafting the Complaint, serving Defendants internationally through a complex process, drafting motions, responding to the Government of India's Amicus Brief, and preparing the inquest memorandum herein and related filings. *See id.* All of this work was necessary to further Plaintiff's interests. Moreover, all the work performed by counsel was appropriately supervised and reasonable in both nature and scope. *See id.*

The normal hourly billing rates for the Gibson Dunn attorneys who have worked on this case are as follows: $1,081.60 for Mr. Karlan, $498.57 for Ms. Checa Chong, $494.59 for Ms. Grysman, $610.00 for Ms. Sreeprakash, $450.00 for Mr. Chianese, $450.00 for Mr. Melman, $450.00 for Ms. Samplin, $450.00 for Ms. Greenbaum, and $435.00 for Mr. Teague. Based on these rates, the hourly rate for Ms. Tai from the Urban Justice Center would be $500 per hour. Additionally, Plaintiff seeks $373.82 per hour for time spent by Gibson Dunn's paralegal on this matter.

Accordingly, Plaintiff seeks a total of $580,220.44 in attorneys' fees and $24,469.97 in costs in this matter.

## CONCLUSION

For the reasons stated above, Plaintiff should be awarded damages and attorneys' fees and costs against the Defendants in the amounts set forth above. Plaintiff should be further awarded punitive damages at an amount determined by the Court.

Dated: New York, New York

December 22, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER, LLP

By:    *M. Karlan* /SIG

Mitchell Karlan (MK-4413)
Jana Nicole Checa (JC-1804)
Sharon I. Grysman (SG-2383)

200 Park Avenue, 46th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*and*

URBAN JUSTICE CENTER
Amy Tai (AT-0366)
123 William Street, 16th Floor
New York, New York 10038
Telephone: (646) 459-3026
Facsimile: (212) 533-4598

*Attorneys for Plaintiff Shanti Gurung*

30