UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SHANTI GURUNG,

        Plaintiff,

   -against-

JOGESH MALHOTRA and NEENA MALHOTRA,

        Defendants.
------------------------------------------------------------------x

Case No. 10-CIV 5086 (VM)

**DECLARATION IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

## DECLARATION OF MITCHELL KARLAN

I, Mitchell Karlan, declare the following based on personal knowledge:

1. My name is Mitchell Karlan; I am over eighteen years of age and am fully competent to testify to the facts set forth in this declaration.

2. I am a partner of the law firm of Gibson, Dunn, & Crutcher LLP ("Gibson Dunn"), with offices at 200 Park Avenue, New York, NY 10166.

3. I am counsel for the Plaintiff in this action and submit this declaration in support of Plaintiff's request for damages, attorneys' fees, and costs from Defendants Jogesh Malhotra and Neena Malhotra ("Defendants").

4. Plaintiffs seek an award of attorneys' fees and costs pursuant to 18 U.S.C. § 1595, 29 U.S.C. §§ 201, *et seq*. and N.Y. Lab. Law §§ 198 and 663(1).

5. Gibson Dunn expended $541,120.44 in attorneys' fees and $24,469.97 in costs and disbursements, for a total of $565,590.41 in attorneys' fees and costs.

6. Taking on this trafficking case pro bono involved a financial risk for Gibson Dunn. If Plaintiff had lost the case, Gibson Dunn would recover nothing for its time and expenses incurred in litigating the matter. The expenses in this matter have been significant, including out of pocket costs for publications of notices in Indian newspapers, process servers, duplication, and research.

7. Gibson Dunn has been working since late May 2010 on this litigation and has not received any payment for this work.

## Legal Services Provided

8. On July 1, 2010, Plaintiff filed her Complaint in this matter against Neena and Jogesh Malhotra. That same day a Summons was issued as to each Defendant.

9. After the Complaint was filed, I proceeded to transmit copies of the Complaint and Summonses to relevant diplomats and government officials of the United States and India.

10. On July 9, 2010, I sent an endorsed letter to Judge Victor Marrero requesting to immediately serve third party subpoenas for documentary discovery from non-party witnesses in the United States. This request was granted on July 12, 2010. Plaintiff proceeded to prepare and serve subpoenas on the United States Department of State; Consulate General of India; Embassy of India; Permanent Mission of India to the United Nations; the United States Citizenship and Immigration Services; and Sri Manish Gupta, an Indian official living in the Defendants' building in Manhattan.

11. Immediately following the filing of the Complaint in this matter, we began the long process of serving the Summons and Complaint on the Defendants. We hired a private process server in New York to serve copies of the Summons and Complaint to the Defendants by

way of the Consulate General of India in New York. The private process server made several attempts to serve the papers at the Consulate General and at Defendants' former residence.

12. In order to satisfy the requirements for service pursuant to the Hague Service Convention, we engaged ProVest and Celeste Ingalls, both of whom were experienced in this area. On August 17, 2010, an Order appointing Celeste Ingalls as international process server was entered. Celeste Ingalls then prepared all required papers and proceeded to relay them to the Central Authority of India for service. Ms. Ingalls served as our liaison with the Central Authority.

13. Additionally, in October 2010 we hired Premier Shield, a private process service company in India. Pawanjit Ahluwalia, an employee of Premier Shield, was in charge of service for our matter. Mr. Ahluwalia attempted to serve the Summons and Complaint on the Defendants at Ms. Malhotra's current place of employment. This required several attempts by Mr. Ahluwalia throughout October and November 2010. When Premier Shield was unable to personally serve the Defendants, we bore the cost of alternative means of service in India. Mr. Ahluwalia attempted service through various means, including by registered mail and private messenger.

14. On November 30, 2010, Judge Marrero directed the Clerk of Court to dismiss the Complaint in this action without prejudice pursuant to FRCP 4(m), allowing Plaintiff to show good cause for reinstatement of the case to the Court's docket within seven days. On December 1, 2010, Plaintiff responded by letter to the Court's November 30 Order stating that the 120 day limitation period enumerated in Rule 4(m) is not applicable to service of the Defendants who live outside the United States and attaching documentation of Celeste Ingalls'

efforts to serve the Defendants through the Central Authority in India. Judge Marrero vacated the November 30 Order and directed the Clerk of Court to reinstate the case to the Active docket.

15. On December 9, 2010, Plaintiff filed a motion, with supporting documents, for leave to serve Defendants by means alternative to the Hague Service Convention given the Defendants' knowledge of the matter and their active evasion of service. The Court entered a Decision and Order on December 10, 2010 granting Plaintiff's motion pursuant to FRCP 4(f)(3) and permitting service to become effective upon: (1) publishing the Summons and a notice to both Defendants, along with a brief statement of the case, in the Hindustan Times and either the Times of India or Business Standard once a week for four consecutive weeks each; (2) mailing the Summons and Complaint by certified mail, return receipt requested, to the Defendants care of the Embassy of India in the United States and the Indian Permanent Mission to the United Nations; and (3) delivering Adobe PDF copies of the Summons, Complaint, and Order to the work email address of Neena Malhotra, dirsought@mea.gov.in. Defendants were given sixty days to answer the Complaint once these service requirements were completed.

16. On January 13, 2011, Plaintiff submitted a letter to Judge Marrero notifying the Court of its efforts in connection with serving third-party subpoenas, including one to the United States Department of State. In response to Plaintiff's subpoena, the State Department indicated that it had important documents that they had deemed confidential, including Plaintiff's contract with Defendants. In order to secure the release of these central documents, Plaintiff requested that the Court issue a certification that "the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court" pursuant to subsection (1) of 8 U.S.C. § 1202 (f). On January 14, 2011, the

Court held that disclosure of this responsive material would serve the interests of the ends of justice in the case. Plaintiff proceeded to arrange for production from the State Department.

17. On February 9, 2011, a letter addressed to Judge Marrero from Ashok Kumar of the Ministry of Law & Justice in India was entered on the docket stating that service on the Defendants of the Summons and Complaint through the Central Authority in India is refused on grounds of diplomatic immunity. On February 10, 2011, Judge Marrero directed Plaintiff to show cause why the action should not be dismissed in view of its inability to effect service on Defendants. On February 15, 2011, Plaintiff responded to the Court, requesting that it be permitted to continue fulfilling the alternative service requirements granted by the Court in its December 10, 2010 Order, and that the Court disregard the letter by Mr. Kumar, particularly given that the Government of India was not a party to the action. Judge Marrero granted Plaintiff's request on that same date.

18. On June 1, 2011 Plaintiff submitted a Notice of Compliance with Service Provisions of the December 10, 2010 Order Granting Plaintiff's Motion for Use of Alternative Means of Service on the Defendants. In accordance with the means prescribed in the December 10 Order, Plaintiff successfully completed service of the Complaint and Summons on the Defendants by carrying out the following: (1) mailing of copies of the Summons and Complaint on December 10, 2010, via certified first class mail, return receipt requested, to the Embassy of India and the Permanent Mission of India to the United Nations; (ii) delivery of Adobe PDF copies of the Summons, Complaint, and Order on December 14, 2010 by e-mail to Defendants at the work e-mail address of Neena Malhotra, dirsouth@mea.gov.in; (iii) publication of the Summons, a notice, and a brief statement of the case in the *Business Standard* on the following dates: January 20, 2011, January 27, 2011, February 3, 2011, and February 10, 2011; (iv) by

5

publication of the Summons in the *Hindustan Times* on the following dates: March 14, 2011, March 22, 2011, March 28, 2011, and April 4, 2011. Service was, therefore, effected as of April 4, 2011. The Defendants were required to respond to the Summons and Complaint by June, 3, 2011.

19. On June 8, 2011, the Clerk of Court for the U.S. District Court for the Southern District of New York entered the Defendants' default on the record by signing a Certificate of Default. On June 14, 2011, service of notice of the Clerk's entry of default was sent to the Defendants by electronic mail.

20. On July 5, 2011, Plaintiff submitted its Motion for Default Judgment against the Defendants who had failed to respond to the Summons and Complaint. That same day, a letter from attorney Adam Finkel was sent on behalf of the Government of India to Judge Marrero requesting that it suspend consideration of Plaintiff's Motion for Default Judgment for sixty days to allow the Government of India to file a motion for leave to file an amicus curiae brief addressing issues of service. Plaintiff, in turn, responded with a letter to Judge Marrero notifying the Court of its filing of the Motion for Default Judgment and requesting that the Court treat Mr. Finkel's letter as a non-event and not consider it.

21. On July 6, 2011, Judge Marrero directed the Government of India to inform the Court of its interest in the action, its relationship to Defendants, and its intentions as to undertaking representation or formal intervention in the matter. On July 11, 2011, Mr. Finkel responded that the Government of India was not representing the Defendants but that it had an interest in protecting its sovereignty and that it wished to file an amicus curiae brief regarding service of process and its sovereignty by August 31, 2011. On July 12, 2011, the Court directed Plaintiff to respond to the matter set forth in Mr. Finkel's letter. In response, Plaintiff addressed

a letter to Judge Marrero on July 15, 2011, deploring India's delay in raising service issues, explaining that service was proper and effective as per the Court's December 10, 2010 Order, and requesting that the Court disregard Finkel's July 11, 2011 letter on behalf of non-party India and grant Plaintiff's Motion for Default Judgment. Mr. Finkel again corresponded with Judge Marrero on July 18, 2011, renewing the Government of India's request to file an amicus brief related to service of process. On August 8, 2011, the Court granted the Government of India's request and set a briefing schedule for submission of the amicus brief and response by Plaintiff.

22. On August 23, 2011, the Government of India filed its amicus brief in the matter. The Court Ordered that Plaintiff respond by August 29, 2011. That same day, Plaintiff requested time to file its response by September 6, 2011 and an increased page limit. Judge Marrero granted the time extension but denied the increased length.

23. On September 6, 2011, Plaintiff submitted its response to the Government of India's amicus brief setting forth the availability of service outside of the Hague Service Convention pursuant to FRCP 4(f)(3) and the propriety of service through the alternative means granted by the Court in its December 10, 2010 Order.

24. On November 22, 2011, Judge Marrero issued a Decision and Order granting Plaintiff's Motion for Default Judgment and re-affirming the propriety of service effected on Defendants. The Court ordered the Clerk of Court to enter judgment of liability against the Defendants and in favor of Plaintiff as to the causes of action stated in the Complaint. The Court further referred the matter to Magistrate Judge Frank Maas for an inquest as to damages in the matter. Determination as to damages is to be completed no later than ninety days from entry of the Decision and Order.

25. On November 28, 2011, Default Judgment was entered.

26. On November 30, 2011, Magistrate Judge Maas issued a Scheduling Order directing Plaintiff to serve and file an inquest memorandum, with accompanying supporting affidavits and exhibits, by December 16, 2011, setting forth proof of damages, costs, attorneys' fees, and proposed findings of fact and conclusions of law.

27. On December 6, 2011, Plaintiff addressed a letter to Magistrate Judge Maas requesting an extension for filing until December 20, 2011. This request was granted.

28. In accordance with Judge Marrero's and Magistrate Judge Maas' orders, Plaintiff has been working towards submission of the inquest memorandum with accompanying affidavits and exhibits.

**Fees for Legal Services from May 25, 2010 through December 20, 2011[1].**

29. My associates and I have kept contemporaneous records of the time we have worked on this matter.

30. The fees for legal services provided by Gibson Dunn to Plaintiff for the period of May 25, 2010, through December 20, 2011, undertaken in connection with litigating the matter and in completing the damages inquest papers, total $541,120.44. A true and correct copy of a billing statement for this period is attached hereto as Exhibit 1.

31. Gibson Dunn has included in this bill the time of the principal Gibson Dunn attorneys who worked on this case: Jana Checa Chong, Sharon Grysman, and me.

32. Gibson Dunn has also included in this bill the time of the other associates who provided assistance in the matter: Netra Sreeprakash and Alfred Chianese.

33. Finally, Gibson Dunn has included in this bill the time of the Law Clerks who provided research assistance in the matter: Steven Teague, Jesse Melman, Ilissa Samplin, and Jessica Greenbaum.

---

[1] Plaintiff does not seek fees for counsel's preparation of this application for fees.

8

34. My average billing rate for the time period was $1,081.60 per hour. A copy of my curriculum vitae is attached hereto as Exhibit 2.

35. Jana Checa Chong's average billing rate for the time period was $498.57 per hour. A copy of Ms. Checa Chong's curriculum vitae is attached hereto as Exhibit 3.

36. Sharon Grysman's average billing rate for the time period was $494.59 per hour. A copy of Ms. Grysman's curriculum vitae is attached hereto as Exhibit 4.

37. Netra Sreeprakash's average billing rate for the time period was $610.00 per hour.

38. Steven Teague's average billing rate for the time period was $435.00 per hour.

39. Alfred Chianese's average billing rate for the time period was $450.00 per hour.

40. Jesse Melman's average billing rate for the time period was $450.00 per hour.

41. Ilissa Samplin's average billing rate for the time period was $450.00 per hour.

42. Jessica Greenbaum's average billing rate for the time period was $450.00 per hour.

43. Angel Arias, a paralegal on this matter, is billed at a rate of $373.82 per hour.

44. Each of the billing rates listed above is similar to those prevailing in the Southern District of New York for similar services by lawyers and paralegals of comparable skill, experience, and reputation.

45. These are the rates regularly charged to and paid by the firm's clients.

46. I supervised the work of all lawyers and paralegals on this matter, and I believe that the work performed was necessary and reasonable and was completed efficiently.

47. The following chart summarizes all of the services rendered by GD&C from May 25, 2010, through December 20, 2011, undertaken in connection with this case:

| Name | Hours | Rate | Total |
|---|---|---|---|
| M. A. Karlan | 32.00 | $ 1,081.60 | $ 34,611.20 |
| N. Sreeprakash | 1.75 | 610.00 | 1,067.50 |
| J. N. Checa Chong | 360.75 | 498.57 | 179,859.13 |
| S. I. Grysman | 363.50 | 494.59 | 179,783.47 |
| S.C. Teague | 129.65 | 435.00 | 56,397.75 |
| A.J. Chianese | 26.50 | 450.00 | 11,925.00 |
| J. Melman | 24.00 | 450.00 | 10,800.00 |
| I.S. Samplin | 32.50 | 450.00 | 14,625.00 |
| J. L. Greenbaum | 90.25 | 450.00 | 40,612.50 |
| A. S. Arias | 30.60 | 373.82 | 11,438.89 |
| | TOTAL | | $ 541,120.44 |

**Costs and Disbursements from May 25, 2010, through December 20, 2011**

48. The total costs and disbursements incurred by Gibson Dunn on Plaintiff's behalf for the period May 25, 2010, through December 20, 2011, for work undertaken in litigating the matter was $24,469.97. *See* Exhibit 1.

| COSTS/CHARGES | RATE |
|---|---|
| Document Retrieval Service | $ 1.84 |
| Filing Fees | 350.00 |
| In-house Duplication | 323.35 |
| Messenger and Courier Expense | 161.40 |
| On-Line Research (Lexis) | 10,904.28 |
| On-Line Research (Westlaw) | 4,925.21 |
| Outside Process Server | 3,495.80 |
| Postage | 55.68 |
| Publication Fees | 4,113.03 |
| Specialized Research/Filing Fees | 93.48 |
| Telephone Charges | 35.50 |
| Travel – Taxi & Other Modes/Miles | 9.40 |
| TOTAL | $ 24,469.97 |

49. Accordingly, the fees for legal services and costs provided by Gibson Dunn to Plaintiff for the period from May 25, 2010, through December 20, 2011, undertaken in connection with this case, excluding the fees and costs associated with the instant application, total $565,590.41.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: New York, New York
      December 22, 2011

By: Mitchell Karlan