UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# ORIGINAL

-------------------------------------X

SHANTI GURUNG,                        :

                    Plaintiff,        :        10 Civ. 5086 (VM)

      - against -                     :        **DECISION AND ORDER**

JOGESH MALHOTRA, et al.,              :

                    Defendants.       :

-------------------------------------X

VICTOR MARRERO, United States District Judge.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 | 16 | 2012
```

## I.   BACKGROUND

Plaintiff Shanti Gurung ("Gurung") brought this action asserting claims pursuant to several federal and New York State labor and human rights laws as well as common law, arising from Gurung's employment by defendants Jogesh Malhotra and Neena Malhotra (the "Malhotras") as a domestic worker.  By Decision and Order dated November 22, 2011 the Court authorized entry of default judgment against the Malhotras and referred the matter to Magistrate Judge Frank Maas for an inquest on damages.

By Order dated February 21, 2012, Magistrate Judge Frank Maas issued a Report and Recommendation (the "Report"), a copy of which is attached and incorporated herein, recommending that Gurung be awarded judgment in a total amount of $1,458,335, plus an additional sum to be determined for expenses of electronic legal research.  The Malhotras have not filed objections to the Report.  For the reasons stated below, the Court adopts the recommendations of the Report in their entirety.

## II.  STANDARD OF REVIEW

A district court evaluating a magistrate judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(b); see also Thomas v. Arn, 474 U.S. 140, 149 (1985); Greene v. WCI Holding Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997).  The Court is not required to review any portion of a magistrate judge's report that is not the subject of an objection.  See Thomas, 474 U.S. at 149.  A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of the magistrate judge as to such matters.  See Fed. R. Civ. P. 72(b); DeLuca v. Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994).

## III.  DISCUSSION

Upon a review of the full record in this litigation, including the papers submitted in connection with this proceeding, as well as the Report and applicable legal authorities, the Court concludes that the findings, reasoning, and legal support for the recommendations made in Report are not clearly erroneous or contrary to law and are thus warranted.  Accordingly, for substantially the reasons set forth in the Report the Court adopts the Report's factual and legal analyses and determinations, as well as its substantive recommendations,

in their entirety as the Court's ruling as to Gurung's application for an award of damages.

### IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Report and Recommendation (the "Report") of Magistrate Judge Frank Maas dated February 21, 2012 (Docket No. 45) is adopted in its entirety, and the application of plaintiff Shanti Gurung ("Gurung") for an award of damages is GRANTED; and it is further

**ORDERED** that the Clerk of Court is directed to enter judgment in favor of Gurung and against defendants Jogesh Malhotra and Neena Malhotra in an amount of $1,458,335 in accordance with the calculations and breakdown of that amount set forth in the Report.

The Clerk of Court is directed to terminate any pending motions and to close this case.


**SO ORDERED.**

Dated:      NEW YORK, NEW YORK
            16 March 2012

                                    Victor Marrero
                                    U.S.D.J.

FEB 23 2012

CHAMBERS OF
JUDGE MARRERO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/12

SHANTI GURUNG,                                   :

                  Plaintiff,             :

        - against -                          :

JOGESH MALHOTRA and                              :
NEENA MALHOTRA,

                           :

                Defendants.            :
--------------------------------------------------------x

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
VICTOR MARRERO**

10 Civ. 5086 (VM) (FM)

**FRANK MAAS**, United States Magistrate Judge.

## I.    Introduction

        Plaintiff Shanti Gurung ("Gurung") commenced this action to recover

damages from defendants Jogesh and Neena Malhotra ("the Malhotras") because of their

barbaric treatment of Gurung while she was employed as their domestic worker.  On

November 28, 2011, Your Honor granted Gurung's motion for a default judgment as to

liability, but directed that the matter be referred to me to conduct an inquest regarding

damages.  (ECF Nos. 31, 32).  For the reasons set forth below, I recommend that Gurung

be awarded judgment against the Malhotras in the amount of $1,458,335, inclusive of

legal fees.

## II.    Standard of Review

        In light of the Malhotras' default, Gurung's well-pleaded allegations

concerning issues other than damages must be accepted as true.  See Cotton v. Slone,

4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,

973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp.

2d 543, 547 (S.D.N.Y. 1998).  Accordingly, the only question before the Court is the

quantum of damages she is entitled to recover.

Although a plaintiff seeking to recover damages against a defaulting

defendant must prove her claim through the submission of evidence, the Court need not

hold a hearing as long as it has determined the proper rule for calculating damages, see

Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and the

plaintiff's evidence establishes, with reasonable certainty, the basis for the damages

specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace

Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Here, because both requirements have

been met, a hearing is unnecessary.

III.    Facts

Gurung's uncontested complaint and inquest papers establish as follows:

In 2006, Gurung moved to the United States from India at the behest of the

Malhotras.  (ECF No. 1 ("Compl.") ¶ 7; ECF No. 37 ("Gurung Aff.") ¶ 2).  At the time,

Neena Malhotra was serving as the "Counselor of Press, Culture, Information, Education,

and Community Affairs at the Consulate General of India in Manhattan."  (Compl. ¶ 8).

Before Gurung left India, the Malhotras promised to pay her 5,000 Indian rupees

(approximately $108) per month for three years, in exchange for "light cooking, light

cleaning, and staffing the occasional house party."  (Id. ¶ 14).  Gurung thought that the

2

5,000 rupees "sounded like a good salary for someone in [her] position." (Gurung Aff. ¶ 5; see also Compl. ¶ 14).

Before Gurung left India, Neena Malhotra helped her to obtain a passport, an "A-3" visa, and an "official identification from the Consulate of India." (See Compl. ¶ 15). In order to ensure that these documents would be issued, Neena Malhotra instructed Gurung to make two misrepresentations to officials at the American Embassy in New Delhi. The first false statement was that Gurung would be paid $7 per hour (not 5,000 rupees per month). As support for that falsehood, Gurung and Neena Malhotra signed and submitted to embassy officials a contract providing that Gurung would be paid the greater of $7 per hour or "the prevailing hourly rates." (ECF No. 42 ("Grysman Affirm.") Ex. 2; see also Compl. ¶ 17). Second, Gurung told the officials that she was eighteen years old when, in fact, she was only seventeen. (Compl. ¶ 17). On March 29, 2006, Neena Malhotra and Gurung flew to New York, where they moved into a three bedroom apartment on East 43rd Street. Jogesh Malhotra joined them approximately one month later. (Id. ¶¶ 18-21).

From the outset, Gurung's work was far more arduous than the Malhotras had represented it would be. (Id. ¶¶ 18-19). Matters got worse after Jogesh Malhotra arrived. (Id. ¶ 21). Gurung initially worked approximately twelve hours per day, but, after Johesh Malhotra moved into the apartment, regularly worked sixteen-hour days. (Id.). In addition to her cooking and cleaning duties, Gurung was required to give Neena Malhotra daily massages, a chore that made her "extremely uncomfortable." (Gurung

3

Aff. ¶ 17; Compl. ¶ 19). At night, the Malhotras forced Gurung to sleep on the floor in their living room, even though there were unoccupied bedrooms. (Compl. ¶ 21).

Neena Malhotra seized Gurung's passport and visa immediately after they were issued and kept them locked in her bedroom so that Gurung could not access them. (Id. ¶ 36). The Malhotras permitted Gurung to leave the apartment only to run errands for them – often without being provided adequate clothing in the winter months – and repeatedly told Gurung that if she failed to return, "the American police and Homeland Security would take [her] money and would find, beat, rape, and imprison [her] before shipping [her] back to India as 'cargo.'" (Gurung Aff. ¶ 33; Compl. ¶ 40). The Malhotras also withheld food from Gurung, allowing her only to eat leftovers from the meals that she prepared for the Malhotras and their guests. Gurung consequently often "went hungry as there were no leftovers to eat." (Gurung Aff. ¶ 25; Compl. ¶ 29). The Malhotras also deprived her of rice, a staple of her native diet. (Compl. ¶ 29). One indication of the privation Gurung was subjected to is the fact that her weight dropped from approximately 147 pounds to less than 84 pounds during the approximately forty months that she was employed by the Malhotras. (Gurung Aff. ¶ 27).

Over the more than three years that she worked for the Malhotras, Gurung received only a single payment of 5,500 rupees (less than $120). (Compl. ¶ 37). Her only other sources of income were meager tips she sometimes received from the Malhotras' party guests and coins that she found on the street while running errands. (Gurung Aff. ¶ 40; Compl. ¶¶ 38-39). When Gurung asked for her promised wages, "the

4

Malhotras would tell [her] that [she] was annoying them and that they would pay [her] later." (Gurung Aff. ¶ 35; Compl. ¶ 38).

On or about July 28, 2009, fearing continued mistreatment, Gurung "desperately summoned the courage" to leave the Malhotras' home while they were away. (Gurung Aff. ¶ 39; Compl. ¶ 42). Using some of her meager savings, she managed to take a taxi to the home of a woman she previously had met at a grocery store. (Gurung Aff. ¶ 40; Compl. ¶ 42).

Shortly after she "escaped," Gurung became "very sick" and was hospitalized. (Gurung Aff. ¶ 44). Gurung had begun to experience severe pain in her side and stomach while she worked for the Malhotras and sometimes would faint. These symptoms continued after she left. Gurung attributes these physical ailments to the "stress, abuse and malnutrition" she experienced at the hands of the Malhotras. (Id. ¶¶ 44-45).

IV.   Discussion

Gurung asserts twenty claims under various federal and state labor and human rights statutes, as well as under state common law. Her principal claims, and the sums that she is entitled to recover with respect to them, are as follows:

A.   Labor Laws

In her complaint, Gurung contends that the Malhotras are jointly and severally liable for damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650, et seq.,

because they willfully failed to pay Gurung legally required wages and did not provide

her with overtime or "spread of hours" pay.  (ECF No. 36 ("Pl.'s Mem.") at 8-16).

       1.    <u>Minimum Wage</u>

      The FLSA requires employers to pay their employees at least the federal

minimum wage for every hour worked.  29 U.S.C. § 206.  "Where an employer fails to

maintain adequate records of his employees' compensable time as required by the FLSA,

a plaintiff employee must produce only 'sufficient evidence to show the amount and

extent of that work as a matter of just and reasonable inference.'"  <u>Cuzco v. Orion</u>

<u>Builders, Inc.</u>, 262 F.R.D. 325, 331 (S.D.N.Y. 2009) (quoting <u>Reich v. S. New England</u>

<u>Telecomm. Corp.</u>, 121 F.3d 58, 67 (2d. Cir. 1995)).  Gurung's complaint alleges that she

worked approximately 84 hours per week from March to May 2006 (before Jogesh

Malhotra arrived) and approximately 112 hours per week from June 2006 until she left

the Malhotras' employ in July 2009.  (Compl. ¶¶ 18, 20-21, 37, 42).  The Malhotras have

not contested these estimations.  Gurung therefore is entitled to receive, at a minimum,

the federal minimum wage for these hours.

      The FLSA further provides that employers must pay their employees the

state minimum wage if it exceeds the federal minimum wage.  <u>See</u> 29 U.S.C. § 218(a)

("No provision of this chapter or of any order thereunder shall excuse noncompliance

with any Federal or State law or municipal ordinance establishing a minimum wage

higher than the minimum wage established under this chapter . . . .").  Throughout the

time Gurung worked for the Malhotras, the New York minimum wage was greater than or

6

equal to the federal minimum wage. <u>Compare</u> 29 U.S.C. § 206(a)(1) & Historical and

Statutory Notes (West 2007 & 2011) <u>with</u> N.Y. Lab. Law § 652(1). Gurung therefore is

entitled to damages calculated on the basis of the New York minimum wage for all hours

she worked for the Malhotras, less the one-time payment of approximately $120 that she

received. (<u>See</u> Compl. ¶ 37). This sum totals $135,720. (<u>See</u> ECF No. 43 ("Tai Decl.")

¶¶ 6-10 & Ex. 1).

> 2.  <u>Additional New York State Unpaid Wages</u>

The employment contract executed by Gurung and Neena Malhotra on

March 1, 2006, states that Gurung will be paid "wages at the prevailing hourly rates of no

less than US$7 per hour (US Federal Minimum Wage)."[1] (Grysman Affirm. Ex. 2).

Gurung contends that she thus is entitled to recover the difference between the state

minimum wage and the "prevailing hourly rates" for her work pursuant to NYLL § 191.

That statute provides, in relevant part, that a domestic worker such as Gurung "shall be

paid the wages earned <u>in accordance with the agreed terms of employment</u>, but not less

frequently than semi-monthly, on regular pay days designated in advance by the

employer." NYLL § 191 (emphasis added). Gurung reasons that NYLL § 191 thus

entitles her to collect unpaid wages at the contract, rather than just the statutory minimum

wage, rate for the hours she worked. (<u>See</u> Pl.'s Mem. at 11 (citing <u>Kang v. Inno Asset</u>

---

[1]     The contract erroneously recited that the federal minimum wage was $7 per hour
when it was executed. In fact, the federal minimum wage was $5.15 per hour until July 2007,
when it increased to $5.85 per hour. <u>See</u> 29 U.S.C. § 206(a)(1) & Historical and Statutory Notes
(West 2007 & 2011).

Dev., LLC, No. 08-CV-4848 (SLT) (JMA), 2011 WL 167454, at *3 (E.D.N.Y. Jan. 28,

2011), Report & Rec. adopted, 2011 WL 1670946 (E.D.N.Y. May 3, 2011); Shim v.

Millennium Grp., 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *4-5 (E.D.N.Y. Oct. 2,

2009))).

    The Second Circuit has expressed doubt, however, as to whether NYLL

§ 191 provides a remedy for unpaid wages, as opposed to wages not timely paid.  As

Judge Livingston explained in Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010):

> New York courts have suggested that plaintiffs may not use
> [NYLL] § 191 to seek unpaid wages to which they claim to be
> entitled under a statute; rather § 191 guarantees only that the
> wages the employer and employee have "agreed" upon be
> paid in a "timely" manner . . . according to the "terms of [the
> employee's] employment."

Id. at 545 n.1 (quoting Jara v. Strong Steel Door, Inc., 20 Misc. 3d 1135(A), 2008 WL

3823769, at *12 (Sup. Ct. Kings County Aug. 15, 2008) ("[T]he gravamen of plaintiffs'

complaint is that the sums paid were not equal to what plaintiffs claim they were entitled

to receive.  To the extent that prevailing wages are sought to be recovered, Labor Law

§ 191 is an inappropriate vehicle for such recovery.") (emphasis added)).

    In any event, Gurung need not rely on NYLL § 191 because she is entitled

to recover these damages on a contract theory alone, inasmuch as her employment

contract unambiguously states that Gurung will be paid "wages at the prevailing hourly

rates" if those rates exceed $7 per hour.  (Grysman Affirm. Ex. 2).  Furthermore, the State

Department's Foreign Affairs Manuals require that employers of A-3 visa applicants

guarantee compensation "at the State or Federal minimum or prevailing wage, whichever is greater." U.S. Dep't of State, 9 Foreign Affairs Manual § 41.21 N.6.2(a)(2), <u>available at</u> http://www.state.gov/documents/organization/87174.pdf ("FAM"). The FAM further instructs consular employees that the United States Department of Labor "maintains an Alien Labor Certification/Occupational Employment Survey (ALC/OES) database that breaks down prevailing wage statistics by occupation and metropolitan area" so that they can determine the appropriate prevailing wage. <u>Id.</u>[2]

According to the ALC/OES database the prevailing wage for domestic workers in New York City was as follows during Gurung's time with the Malhotras:

| March 29, 2006 – June 30, 2006 | $9.74/hour |
| July 1, 2006 – June 30, 2007 | $9.47/hour |
| July 1, 2007 – June 30, 2008 | $9.59/hour |
| July 1, 2008 – June 30, 2009 | $9.86/hour |
| July 1, 2009 – July 28, 2009 | $10.23/hour |

---

[2]    Gurung's contract also provides that "a reasonable and mutually agreed deduction from the employee's salary will be made" in exchange for lodging provided by the Malholtras. (Grysman Affirm. Ex. 2). The FAM prohibits such deductions, however, noting that: "Housing provided to A-3 . . . workers is for the benefit of the employer and thus it is not permissible to withhold from wages any amount for lodging." 9 FAM § 41.21 N.6.2(a)(2). Gurung's contract similarly provides that "a reasonable and mutually agreed deduction" from her wages will be made for food. (Grysman Affirm. Ex. 2). Although the FAM permits such deductions, it requires that, "if any deduction is taken for meals, it must be documented[.]" 9 FAM § 41.21 N.6.2(a)(2). The Malhotras have failed to provide any documentation regarding the value of the food scraps they provided to Gurung. Accordingly, they are not entitled to any offset.

9

(<u>See</u> Grysman Affirm. Ex. 3).[3]  Given these prevailing wage rates, Gurung is entitled to

an additional $49,945 in damages based on her employment contract.  (<u>See</u> <u>id.</u> Ex. 2; Tai

Decl. ¶¶ 12-14 & Ex. 1).

        3.     <u>Overtime Under New York State Law</u>

Gurung correctly contends that she further is entitled to overtime pay under

the NYLL.  Because Garung's employment as a domestic worker predated the passage of

the New York Domestic Workers Bill of Rights, <u>see</u> N.Y. Lab. Law § 170, she is entitled

only to one and one-half times the <u>minimum</u> (as opposed to her contract) wage for any

hours she worked in excess of 44 per week.  <u>See</u> 12 N.Y. Comp. Codes R. & Regs. § 142-

2.2; <u>Manliguez v. Joseph</u>, 226 F. Supp. 2d 377, 389 (E.D.N.Y. 2002).  The 40 overtime

hours per week that Gurung worked between March 29 and May 31, 2006, and the 68

overtime hours per week that she worked thereafter entitle her to an additional $40,898 in

overtime wages under the NYLL.  (<u>See</u> Tai Decl. ¶¶ 15-19 & Ex. 1).

        4.     <u>Spread of Hours</u>

The NYLL requires an employer to pay an employee who works more than

ten hours in one day an additional hour at the minimum wage.  12 N.Y. Comp. Code R. &

Regs. § 142-2.4.  Gurung alleges that she worked between twelve and sixteen hours per

day every day of the week, but never was paid for an additional hour.  Garung is therefore

---

     [3]     The prevailing wage rate thus actually declined slightly for one of the years
Gurung worked in New York.

10

entitled to spread of hours damages in the amount of $8,598. (See Tai Decl. ¶¶ 20-21 & Ex. 1).

               5.     Willfulness of the Malhotras' Violations

An employer's violation of the FLSA is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999). The standard for willfulness under NYLL "does not appreciably differ" from that under the FLSA. Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002). Here, Gurung alleged that the Malhotras acted willfully by, among other things, ignoring her repeated requests to be paid for her work. (See Compl. ¶ 38; Gurung Aff. ¶ 35). "Where a default judgment is entered against a defendant under the FLSA, allegations that the violations were willful are deemed admitted." Pineda v. Masonry Constr., Inc., --- F. Supp. 2d ---, 2011 WL 5572631, at *6 (S.D.N.Y. Nov. 15, 2011) (citing Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *1-2 (S.D.N.Y. Sept. 30, 2010)). Gurung thus has established that the Malhotras willfully violated the FLSA and NYLL.

As Gurung correctly notes, a finding of willfulness might affect the statute of limitations period for her FLSA claims. (Pl.'s Mem. at 12-14). The FLSA statute of limitations for a willful violation is three years. 29 U.S.C. § 255(a). The statute of limitations for NYLL claims – willful or not – is six years. N.Y. Lab. Law § 663(3). Some of Gurung's FLSA claims accrued more than three years before she initiated this

11

lawsuit. (See Pl.'s Mem. at 13 n.5).  Nevertheless, in <u>Fisher v. Vassar Coll.</u>, 70 F.3d

1420, 1452 (2d. Cir. 1995), the Second Circuit held that a defendant waived its FLSA

statute of limitations defense by failing to raise it in the district court prior to its appeal.

The same principle is applicable in this case, in which the defendants failed to appear, and

thus did not assert any defenses.  Gurung therefore may recover on her FLSA claims,

even if they might have been untimely had the Malhotras asserted a timely statute of

limitations defense.

> 6.    Liquidated Damages

>      Both the FLSA and the NYLL provide for the recovery of liquidated, in

addition to compensatory, damages.  Liquidated damages in an amount equal to

compensatory damages are mandatory under the FLSA, unless the employer demonstrates

that it acted in good faith.  29 U.S.C. §§ 216(b), 260.  Liquidated damages also were

available in an amount equaling twenty-five percent of an employee's proven

compensatory damages for willful violations of the NYLL committed during the period

Gurung worked for the Malhotras.  N.Y. Lab. Law § 663(1) (McKinney's 2010).[4]  Since

there is uncontradicted evidence that the Malhotras acted willfully and in bad faith,

Gurung is entitled to liquidated damages.

>      There remains a question as to how Gurung's liquidated damages should be

calculated under the FLSA.  Gurung contends that the FLSA entitles her to recover an

---

[4]      The New York Labor Law has recently been amended to permit an award of
damages equal to the improperly withheld pay.  See N.Y. Lab. Law § 198(1-a).

amount equal to her minimum wage damages under the <u>state</u> minimum wage law. (<u>See</u> Tai Decl. ¶ 22 & Ex. 1). Courts in this District have so held, relying on 29 C.F.R. § 778.5, which incorporates the state minimum wage for purposes of calculating overtime under the FLSA, and 29 U.S.C. § 218(a), which provides that "[n]o provision of [the FLSA] shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . ." <u>See, e.g.</u>, <u>Pereia v. J. Sisters Hair Care Prods., Inc.</u>, No. 08 Civ. 5437 (GBD) (RLE), 2010 WL 2194807, at *1 & n.1 (S.D.N.Y. June 1, 2010); <u>Mendez v. Nooch, Inc.</u>, No. 07 Civ. 11174 (LLS), 2009 WL 666771, at *2, 4-5 (S.D.N.Y. Mar. 6, 2009).

The language of the statute does not support this interpretation. As Judge Chin (sitting as a District Judge) recently observed in <u>Lanzetta v. Florio's Enters., Inc.</u>, No. 08 Civ. 6181 (DC), 2011 WL 3209521 (S.D.N.Y. July 27, 2011), although the FLSA's savings clause "expressly defers to state wage laws affording employees greater protection, it does not also adopt such higher wages as the measure of damages for FLSA violations." <u>Id.</u> at *4 (internal quotation marks omitted). To the contrary, "for non-overtime wages, the FLSA requires only that employers pay the minimum wage rates set by <u>federal law</u>." <u>Pineda-Herrera v. Da-Ar-Da, Inc.</u>, No. 09-CV-5140 (RLM), 2011 WL 2133825, at *5 (E.D.N.Y. May 26, 2011) (emphasis added). To hold otherwise would require reading the FLSA as "incorporat[ing] existing state law," which the statute "does not purport to [do]." <u>Cosme Nieves v. Deshler</u>, 786 F.2d 445, 452 (1st Cir. 1986).

13

Gurung therefore is entitled only to FLSA liquidated damages in an amount equal to the <u>federal</u> minimum wage for the hours for which she was not paid.  This sum totals $111,256.  (See Tai Decl. ¶¶ 22-23 & Ex. 1).[5]

Under the NYLL, for the period in question, Gurung is entitled to recover liquidated damages in an amount equal to twenty-five percent of her state minimum wage, overtime, and spread of hours damages.  N.Y. Lab. Law § 663(1).  She is not further entitled to twenty-five percent of her prevailing wage damages because, as noted above, those damages are recoverable only under a contract theory, not under the NYLL.  Gurung's NYLL liquidated damages thus total $46,304.  (See Tai Decl. ¶ 23 & Ex. 1).

District courts in this Circuit disagree as to whether a plaintiff can simultaneously recover liquidated damages under both the FLSA and the NYLL.  The majority view is that such a simultaneous recovery is permissible because liquidated damages under the FLSA and the NYLL serve different purposes.  As those cases accurately state, while liquidated damages under the FLSA are considered compensatory,

---

[5]     These damages were calculated as follows:

| DATES | HOURS WORKED | MINIMUM WAGE | DAMAGES |
|---|---|---|---|
| 3/29/06 – 7/23/07 | 7452.40 | $5.15/hour | $38,380 |
| 7/24/07 – 7/23/08 | 5840.00 | 5.85/hour | 34,164 |
| 7/24/08 – 7/23/09 | 5840.00 | 6.55/hour | 38,252 |
| 7/24/09 – 7/28/09 | 80.00 | 7.25/hour | 580 |
| | | **Total** (less $120): | $111,256 |

14

essentially serving as a form of prejudgment interest, liquidated damages under the

NYLL are punitive. See, e.g., Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-

62 (S.D.N.Y. 2008) ("[A] prevailing plaintiff who can justify both [FLSA] liquidated

damages and state-law [liquidated] damages should be eligible to recover both, since

they . . . serve fundamentally different purposes.") (internal quotation marks omitted);

accord Lanzetta, 2011 WL 3209521, at *5; Jin M. Cao, 2010 WL 4159391, at *5; Callier

v. Superior Bldg. Servs., Inc., No. 09-CV-4590, 2010 WL 5625906, at *4 (E.D.N.Y. Dec.

22, 2010).

       Other courts have disagreed, holding that "a plaintiff is not entitled to both

federal and state liquidated damages because they serve the same practical purposes in

compensating the plaintiff and deterring wage violations." Li Ping Fu v. Pop Art Int'l

Inc., No. 10 Civ. 8562 (DLC) (AJP), 2011 WL 4552436, at *5 (S.D.N.Y. Sept. 19, 2011),

Report & Rec. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec

07, 2011); see also Chun Jie Yin v. Kim, No. 07-CV-1236, 2008 WL 906736, at *7

(E.D.N.Y. Apr. 1, 2008) ("[T]o the extent the 'liquidated damages' available under the

FLSA can properly be characterized as compensation, it is apparent that the 'liquidated

damages' available under the state statute compensates the exact same harm – namely, the

harm caused by the defendant's culpable state of mind."); Jin v. Pac. Buffet House, Inc.,

No. 06-CV-579 (VVP), 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009) ("Regardless

of the purpose, the award under the FLSA is four times the award under state law, and

15

thus is more than sufficient to satisfy any punitive purpose the state law is intended to serve.").[6]

Although there are concededly similarities in the "practical purposes" of both statutes, Li Ping Fu, 2011 WL 4552436, at *4, the Second Circuit has impliedly recognized that the liquidated damages provisions serve different goals.  See Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 70-71 (2d Cir. 1997) ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature."). Consistent with the majority view, Gurung therefore should be permitted to recover liquidated damages under both the FLSA and the NYLL.  Indeed, by opting not to participate in this suit, the Malhotras have waived any claim to the contrary.

    7.    Prejudgment Interest

Gurung is also entitled to prejudgment interest on her state law claims at the rate of nine percent per annum.  N.Y. C.P.L.R. § 5001.  That rate is not also applicable to her stand-alone FLSA claims for which liquidated damages were assessed.  See Santillan v. Henao, --- F. Supp. 2d ---, 2011 WL 4628752, at *9 (E.D.N.Y. Sept. 30, 2011) ("Since liquidated damages awarded under the FLSA for unpaid overtime [are] designed to compensate employees for delay in payment, such damages are the functional equivalent of prejudgment interest on the overtime pay.").  Gurung's counsel has appropriately

_____

[6]    It bears mention that in Li Ping Fu, Magistrate Judge Peck found the minority view even more compelling "now that the New York Labor Law's liquidated damages provision has been amended to mirror the FLSA by providing 100% liquidated damages."  Li Ping Fu, 2011 WL 4552436, at *5 n.9.

calculated prejudgment interest on her overtime, spread of hours, and prevailing wage claims using the midpoint of her tenure as the Malhotras' employee as the basis for calculation. (Tai Decl. ¶¶ 24-26 & Ex. 1); see N.Y. C.P.L.R. § 5001(b); Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at \*5-6 (S.D.N.Y. Jan. 7, 2004) (approving midpoint as basis for calculation of interest). Accordingly, Gurung is entitled to $36,076 in prejudgment interest.

      B.    <u>Emotional Distress</u>

      Gurung contends that she is also entitled to damages for emotional distress under several federal statutes prohibiting human trafficking and forced servitude. See, e.g., 18 U.S.C. §§ 1584, 1589, 1590, 1592; see also id. § 1595 ("An individual who is a victim of a violation of [§§ 1581, et seq.] may bring a civil action against the perpetrator . . . and may recover damages and reasonable attorneys fees."). In the alternative, Gurung seeks damages for emotional distress under New York common law.

      Section 1589 of Title 18 of the United States Code, read together with Section 1595, authorizes the recovery of damages from an individual who "knowingly provides or obtains the labor or services of a person . . . by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . . ." In this case, Gurung has unquestionably established that the Malhotras induced her to work without pay by seizing her passport and visa, restricting her ability to leave their apartment, and constantly warning her that if she traveled on her own without

17

their permission, she would be arrested, beaten, raped, and sent back to India as "cargo." (Gurung Aff. ¶¶ 29, 33).  Gurung thus is entitled to recover emotional distress damages under federal law.

Turning to the quantum of damages Gurung should recover, in the context of employment discrimination cases, proof of conduct that is "outrageous and shocking or where the physical health of plaintiff [is] significantly affected" often warrants damages for emotional distress in excess of $100,000.  Rainone v. Potter, 388 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2005).  Indeed, in a lawsuit in the District of Columbia with facts remarkably similar to those here, the magistrate judge recommended emotional distress damages in the amount of $250,000.  Mazengo v. Mzengi, Civ. No. 07-756 (RMC) (AK), 2007 U.S. Dist. LEXIS 99277, at *23-24 (D.D.C. Dec. 20, 2007).  As that judge explained:

> [The defendant], as an official with the Tanzanian embassy in Washington, D.C., was in a unique position to bring [the plaintiff] to the United States under a special visa reserved for domestic employees of diplomats.  The [defendants] isolated [the plaintiff] in their home, would not give her telephone calling cards to contact her family, and did not teach her how to use public transportation.  These factors clearly support awarding [the plaintiff] damages for the emotional harms that she suffered during the four years that she was a prisoner in the [defendants'] home.  Accordingly, the undersigned recommends that the trial court award [the plaintiff] $250,000 for her physical and emotional injuries.

Id. (internal citations omitted).

18

Here, Gurung was a victim of similar "outrageous and shocking" conduct. Her documents were seized, her travel was restricted, and she was not permitted to telephone her family. (Compl. ¶ 34). Significantly, Gurung also was deprived of food, which caused her to lose more than sixty pounds in just over three years (see Gurung Aff. ¶ 27); was subjected to physical and mental abuse (id. ¶¶ 20, 22-23); was restricted in her ability to practice her religion (id. ¶ 33); and suffered from "headaches, lack of sleep, and extreme stomach pains" as a result of the Malhotras' outrageous conduct (id. ¶¶ 44, 47-49). Many of Gurung's physical and emotional problems also are continuing. Therefore, I recommend that Gurung be awarded damages for her emotional distress in the amount of $500,000.

C.    Punitive Damages

Gurung is also entitled to punitive damages. In New York, punitive damages are recoverable "where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but [also] to deter him." Walker v. Sheldon, 10 N.Y.2d 401, 404 (1961). On the facts of this case, I recommend a punitive damage award in the amount of $300,000. See Canal v. Dann, No. 09-03366 CW, 2010 WL 3491136, at *4 (N.D. Cal. Sept. 2, 2010) (awarding over $300,000 in compensatory damages and the same amount in punitive damages on similar facts).

19

D.    Total Damages Exclusive of Attorneys' Fees

In sum, I recommend that Gurung be awarded $392,721 for unpaid wages (including liquidated damages), $36,076 in prejudgment interest, $500,000 for emotional distress, and $300,000 in punitive damages, for a total of $1,228,797.

E.    Attorneys' Fees and Costs

Finally, Gurung seeks to recover attorneys' fees in the amount of $580,220.44 and costs in the amount of $24,469.97. Both the FLSA and the NYLL are fee-shifting statutes, entitling Gurung to recover her reasonable attorneys' fees and costs. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).[7]

1.    Reasonable Hourly Rate

In assessing the reasonableness of the hourly rates charged by Gurung's counsel, the court may consider the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience and reputation." Gierlinger v.

---

[7]    Effective April 9, 2011, N.Y. Lab. Law § 663(4) provides that:

In any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorneys' fees and costs incurred in enforcing any court judgment. Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

Therefore, if the Malhotras fail either to pay Gurung the attorneys' fees awarded by Your Honor or appeal within ninety days, the portion of that judgment attributable to NYLL claims will automatically increase by fifteen percent.

20

Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). Additionally, the Court may rely on its own knowledge of private firm hourly rates. Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987). "Both [the Second Circuit] and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008)).

Gurung was represented in this action by Gibson, Dunn & Crutcher ("Gibson Dunn"), a law firm with over 250 lawyers in its New York office. Gibson Dunn, http://www.gibsondunn.com/offices/newyork (last visited Feb. 15, 2012). There are ten timekeepers at the firm for whom Gurung seeks to recover fees: one is a partner, four are present or former associates, four are clerks, and one is a paralegal. (See ECF No. 40 ("Karlan Decl.") ¶¶ 31-33). Gurung also seeks to recover attorney's fees for Amy Tai, a staff attorney at the Urban Justice Center. (See Tai Decl. ¶¶ 28-36).

The most highly compensated attorney for whom Gurung seeks to recover fees is Mitchell Karlan, a partner at Gibson Dunn who served in a supervisory role in this case. Mr. Karlan has been practicing law for over thirty years and has substantial experience in civil rights litigation. (See Karlan Decl. Ex. 2). Gurung seeks to be

21

reimbursed for his time at rates that correspond to an average rate of $1,081.60 per hour.
(Id. ¶ 34).

Two of the Gibson Dunn associates account for the majority of the hours
billed. Jana Checa Chong and Sharon Grysman both graduated from law school in 2009.
Gurung seeks reimbursement for both of them at a rate of approximately $500 per hour.
(Id. ¶ 35-36 & Exs. 3-4). The other two associates who worked on this case are Netra
Sreeprakash and Alfred Chianese. Gurung seeks to be reimbursed at rates averaging $610
per hour for Ms. Sreeprakash, and $450 for Mr. Chianese. (Id. ¶¶ 37, 39). Finally,
Gurung seeks rates averaging between $435 and $450 per hour for Gibson Dunn's law
clerks, and $373.82 for the sole Gibson Dunn paralegal who worked on the case.

Gurung also seeks to recover $500 per hour for Ms. Tai's time. (Id. ¶¶ 38,
40-43; Pl.'s Mem. at 29). Ms. Tai is a 2008 law school graduate, who spent a year as a
staff attorney for the Second Circuit before joining the Urban Justice Center. (Tai Decl.
¶¶ 29-31).

In exercising its "considerable discretion" as to attorneys' reasonable hourly
billing rates, one of the factors a court should consider is the rates that a "paying client
would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to
spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at
190; see Perdue, 130 S. Ct. at 1672 ("[A] 'reasonable' fee is a fee that is sufficient to
induce a capable attorney to undertake the representation of a meritorious civil rights
case."). The issue thus is not what well-heeled clients might be willing to pay, but the

"hourly rate at which a client who wished to pay no more than necessary would be willing

to compensate his attorney" for the services that Gibson Dunn provided. <u>Arbor Hill</u>, 522

F.3d at 191.[8]

There is no question that Gurung could have "induce[d] a capable attorney

to undertake [her] representation" at rates far lower than those charged by Gibson Dunn.

Courts in this District have determined in recent cases that the range of appropriate fees

for experienced civil rights and employment law litigators is between $250 and $450.

See <u>Allende v. Unitech Design, Inc.</u>, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011)

(hourly rates of $450 for partner, $300 for associates, $125 for law clerks, and $100 for

paralegal at "well-known and highly respected law firm" are "consistent with rates

awarded by the courts in other FLSA or similar statutory fee cases"); <u>Wong v. Hunda</u>

<u>Glass Corp.</u>, No. 09 Civ. 4402 (RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010)

(awarding $350 per hour to two employment attorneys with twelve years of legal

experience); <u>De Los Santos v. Just Wood Furniture, Inc.</u>, Nos. 05 Civ. 9369 (WWE), 06

Civ. 5749 (WWE), 2010 WL 445886, at *3 (S.D.N.Y. Feb. 2, 2010) (a rate of $250-$350

per hour is reasonable for an employment attorney); <u>Torres v. City of N.Y.</u>, No. 07 Civ.

3473 (GEL), 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008) ($350 per hour is

reasonable for an attorney with ten years' experience); <u>Heng Chan v. Sung Yue Tung</u>

---

[8]     Applying these standards to Mr. Karlan's application for fees in <u>Arbor Hill</u>,
Magistrate Judge Homer concluded that he was entitled to recover $210 per hour for services
rendered in the Northern District of New York, rather than the requested rate of more than $700
per hour. <u>See</u> <u>Arbor Hill</u>, No. 03-CV-502 (NAM) (DRH), ECF No. 134 (Report & Rec.) at 7,
14, <u>adopted</u> 419 F. Supp. 2d 206, 211 (N.D.N.Y. 2005), <u>aff'd</u>, 522 F.3d 182.

23

Corp., No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at * 3-4 (S.D.N.Y. May 8, 2007)
(awarding Skadden Arps partner with sixteen years' experience $450 per hour, associate
with six years' experience $300 per hour, and associate director of Urban Justice Center
with fifteen years' experience $400 per hour).

   Based on Mr. Karlan's demonstrated experience and skill in civil rights and
employment litigation, I find that Gurung is entitled to recover fees for his work at the
rate of $450 per hour.  As junior associates at a large, well-respected law firm, I find that
a reasonable fee for Ms. Chong and Ms. Grysman is $275 per hour.  Because Gurung has
failed to provide information regarding the tenure and experience of Ms. Sreeprakash or
Mr. Chianese, I find that $275 per hour is also a reasonable fee for their work, as it is for
the work of Ms. Tai.  Finally, I find that Gurung is entitled to $150 per hour for the work
of Gibson Dunn's law clerks, and $100 per hour for the work of its paralegal.

   2. <u>Hours Reasonably Expended</u>

   Having assessed the reasonableness of Gurung's counsels' hourly rates, I
now turn to the reasonableness of the hours expended by counsel.

   To enable a court to determine the reasonableness of the hours expended, a
party seeking an award of attorneys' fees must submit contemporaneous time records
indicating the number of hours expended and the nature of the work done.  See <u>Lewis v.
Coughlin</u>, 801 F.2d 570, 577 (2d Cir. 1986); <u>N.Y. State Ass'n for Retarded Children, Inc.
v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983); <u>Puglisi v. Underhill Park Taxpayer Ass'n</u>,
964 F. Supp. 811, 817 (S.D.N.Y. 1997).  In keeping with this requirement, Gurung has

24

furnished the Court with her attorneys' detailed contemporaneous time records. (See Karlan Decl. Ex. 1; Tai Decl. Ex. 3).

Gurung seeks reimbursement for a total of 1091.5 hours of work by the attorneys, clerks, and paralegals at Gibson Dunn, and 78.2 hours of work by Ms. Tai at the Urban Justice Center. (See Karlan Decl. ¶ 47; Tai Decl. Ex. 3). Having reviewed the time records, I find that the number of hours expended on this case by Gibson Dunn was excessive in certain respects. For example, Gibson Dunn timekeepers spent approximately 300 hours researching and preparing their submissions for this uncontested inquest, with much of that time devoted to researching and drafting portions of the Plaintiff's memorandum of law that discussed unnecessarily duplicative causes of action. (See Karlan Decl. Ex. 1; Pl.'s Mem. at 17-24).

In light of these and other billing concerns, it is appropriate to reduce all of Gibson Dunn's indicated time charges by twenty-five percent. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) ("an across-the-board percentage cut[ ] in hours [is] a practical means of trimming fat from a fee application"); Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05 Civ. 10100 (KMW) (KNF), 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008) (reducing attorneys' fee by seventy-five percent when "a substantial amount of work performed . . . was redundant and unnecessarily duplicative"). After making the hourly rate and time adjustments described above, I find that Gurung is entitled to recover a total of $199,893 as her reasonable attorneys' fees for Gibson Dunn's services. Additionally, because I find that Ms. Tai's

25

hours are reasonable, Gurung is entitled to recover $21,505 as her attorneys' fees for the services of the Urban Justice Center.

  3. <u>Costs</u>

   Finally, Gurung seeks to recover costs in the amount of $24,469.97.  Of that amount, $15,829.49 is attributed to the cost of conducting electronic legal research. Although this may be the amount Gibson Dunn customarily bills its clients for those services, Gurung's papers do not indicate what percentage of this sum represents Gibson Dunn's actual costs and what percentage reflects overhead.  Because the remaining costs are reasonable, I recommend that Gurung recover $8,640 in costs, plus whatever sum for legal research she subsequently may prove is reasonable.

V. <u>Conclusion</u>

   In sum, I recommend that Gurung be awarded damages in the following amounts:

| CLAIM | AMOUNT |
| --- | --- |
| FLSA Unpaid Wages | $135,720 |
| Contract Damages | 49,945 |
| Overtime Wages | 40,898 |
| Spread of Hours Wages | 8,598 |
| FLSA Liquidated Damages | 111,256 |
| NYLL Liquidated Damages | 46,304 |
| Prejudgment Interest | 36,076 |
| Emotional Distress | 500,000 |

26

| | |
|---|---|
| Punitive Damages | 300,000 |
| Attorneys' Fees | 220,898 |
| Costs | 8,640 |
| Electronic Research | TBD |
| **Total:** | **$1,458,335**, plus electronic legal research |

V.      Notice of Procedure for Filing of Objections to this Report and Recommendation

       The parties shall have fourteen days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable Victor Marrero and to the chambers of the undersigned

at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to

any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any

requests for an extension of time for filing objections must be directed to Judge Marrero.

The failure to file these timely objections will result in a waiver of those objections for

purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas

v. Arn, 474 U.S. 140 (1985).

Dated:      New York, New York
              February 21, 2012

FRANK MAAS
United States Magistrate Judge

27

Copies to:

Amy Tai, Esq.
Urban Justice Center
123 William Street, 16th Floor
New York, NY 10038

Mitchell A. Karlan, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 48th Floor
New York, NY 10166

28