# 9 FAM 41.21
# NOTES

*(CT:VISA-1690;   09-15-2011)*
*(Office of Origin:   CA/VO/L/R)*

## 9 FAM 41.21 N1  EXEMPTIONS FROM INELIGIBILITY PROVISIONS

### 9 FAM 41.21 N1.1  Exemptions for A-1 Class

*(TL:VISA-320;   09-27-2001)*

a. In exempting class A-1 foreign government officials from the provisions of the Immigration and Nationality Act (INA) relating to aliens ineligible to receive visas, the Congress acted on the assumption that to do otherwise might infringe upon the constitutional prerogative of the President to receive ambassadors and other public ministers (Article II, Section 3 of the Constitution).  The legislative history underlying the distinctions made in the INA between A-1 and A-2 classes of foreign government officials offers some assistance in determining legislative intent.  Committee Report No. 1365 which accompanied House Report No. 5678, 82nd Congress contains the following paragraph on page 34.

b. Ambassadors, public ministers, and career diplomatic and consular officers who have been accredited by foreign governments recognized de jure by the United States and accepted by the President or the Secretary of State, and members of their immediate families, are exempted from all provisions relating to the exclusion and deportation of aliens generally, except those provisions relating to reasonable requirements of passport and visas as means of identification and documentation.  In view of constitutional limitations, such aliens may be excluded on grounds of public safety only under such regulations as may be deemed necessary by the President.

### 9 FAM 41.21 N1.2  Absence of Presidential Directive

*(CT:VISA-1437;   06-02-2010)*

The President has not issued a directive to date applying the provisions of INA 212(a)(3)(A) (8 U.S.C. 1182(a)(3)(A)), (3)(B), and (3)(C) to aliens within the A-1 classification.  (See INA 102(1)) (8 U.S.C. 1102(1)).

# 9 FAM 41.21 N2  ISSUING CERTAIN VISAS UPON APPROPRIATE REQUEST

*(CT:VISA-1237;   07-01-2009)*

Ordinarily, you may issue a visa in the A, C-2, C-3, G, or North Atlantic Treaty Organization (NATO) categories only upon receipt of a note from the appropriate foreign office, mission, international organization, or NATO authority.  Under unusual circumstances, if you issue a visa upon the oral request of a competent foreign authority, you make a note in the nonimmigrant visa (NIV) system regarding the request (e.g., name and position of requester, date of request, etc.).  You should also solicit a written confirmation from the appropriate foreign office, mission, international organization, or NATO authority.

# 9 FAM 41.21 N3  WAIVER OF PERSONAL APPEARANCE AND FILING OF VISA APPLICATIONS

*(CT:VISA-1300;   09-16-2009)*

Under the provisions of 22 CFR 41.102(a)(2) and (b)(3), you are authorized to waive personal appearances for A-1, A-2, C-2, C-3, G-1, G-2, G-3, G-4, and NATO 1-6 aliens and applicants for diplomatic or official visas.  However, in such cases, pursuant to 22 CFR 41.103(a)(3) even if a personal appearance of a visa applicant is waived, the filing of an application is not waived.

# 9 FAM 41.21 N4  ALIENS OF CLASSES A AND G ON ASSIGNMENTS OF LESS THAN 90 DAYS

*(CT:VISA-917;   11-29-2007)*

Posts are to enter Temporary Duty ("TDY") in the annotation field of a machine readable visa (MRV) issued to the recipient of an A or G visa who is coming to the United States for assignments of less than 90 days.  The request for an A or G visa must clearly specify that the official is coming for a temporary assignment of less than 90 days.  Absent this information, you are to seek clarification about the length of the assignment from the authorities concerned.

# 9 FAM 41.21 N5  MEMBERS OF IMMEDIATE FAMILY OF FOREIGN OFFICIALS

## 9 FAM 41.21 N5.1  "Immediate Family"

### 9 FAM 41.21 N5.1-1  Spouse and Unmarried Sons and Daughters

*(CT:VISA-1437;   06-02-2010)*

The term "immediate family" includes the spouse and unmarried legal sons and daughters of any age of the principal alien.  Such legal sons and daughters need not previously have qualified as a "child" as defined in INA 101(b)(1) (8 U.S.C. 1101(b)(1)).

### 9 FAM 41.21 N5.1-2  Other Members of Principal Alien's Household

*(CT:VISA-1437;   06-02-2010)*

a. The term "immediate family" may also include, upon individual authorization from the Department (see 9 FAM 41.21 N5.2, paragraph c), any other alien who will reside regularly in the household of the principal alien, is not a member of some other household, and is recognized as an immediate family member of the principal alien by the sending Government or International Organization, as demonstrated by eligibility for rights and benefits such as the issuance of a diplomatic or official passport or other similar documentation, or travel or other allowances.  Aliens who may qualify for immediate family status on this basis include: any other relative, by blood, marriage, or adoption, of the principal alien or spouse; a domestic partner; and a relative by blood, marriage, or adoption of the domestic partner.  The term "domestic partner" for the purpose of this section means a same-sex domestic partner.

b. Before you issue a derivative visa in an A or G classification other than G-4 to a domestic partner, you must confirm that the sending state would provide reciprocal treatment to domestic partners of U.S. Mission members.  Individuals who do not qualify as immediate family, as described above, may otherwise potentially qualify for a B-2 visa (see, e.g., 9 FAM 40.101 N4 and 9 FAM 41.31 N14.4).  In any request for an advisory opinion (AO) (per 9 FAM 41.21 N5.2 paragraph c) for an individual case involving significant foreign policy issues or public interest, address how the policy issues or public interest relate to the visa case.

## 9 FAM 41.21 N5.2  Aliens Who are Members of

# Some Other Household

*(CT:VISA-1386;   12-11-2009)*

a. An alien who has been a member of a household other than the household of the principal alien would not normally be included within the "immediate family" of the principal alien as that term is defined in 22 CFR 41.21(a)(3), regardless of other circumstances.  Thus a nephew of college age who has resided in the household of the principal alien's sister and brother-in-law would not qualify as an immediate relative of the principal alien simply to join the principal alien's household with the intention of attending college in the United States.  F-1 classification under sponsorship of the principal alien might be appropriate in such a situation.

b. However, the fact that an alien has been, even in the recent past, a member of some other household does not preclude a finding that, at the time of application for a visa, the applicant is a member of the household of the principal alien.  For example, a recently widowed, divorced or aging parent may have closed a former household with the intention of becoming part of the principal alien's household.  This could also occur because, due to advanced age or infirmity, the parent has experienced significant difficulty in maintaining his or her own household.  The test in adjudicating these cases is whether the applicant, for reasons of age, health, or change in circumstances, has a compelling reason to join the household of the principal alien rather than maintain or reestablish an independent household.

c. You may consider "immediate family" status to be individually authorized by the Department of State in accordance with 22 CFR 41.21(a)(3)(iv) in all cases in which you have made a favorable determination on the alien's application provided that, in the case of a domestic partner, you have confirmed that the sending state would provide reciprocal treatment to domestic partners of U.S. Mission members, and provided that in your judgment no significant foreign policy issues or public interest exists.  If you are unable to confirm reciprocal treatment or if significant foreign policy issues or public interest exist, you must refer the case to the Department (CA/VO/L/A) for an advisory opinion (AO).

# 9 FAM 41.21 N5.3  Aliens Who Will Reside Regularly in Household of Principal Alien

*(TL:VISA-2;   08-30-1987)*

An alien may be held to reside regularly in the household of the principal alien even though actually absent from the household for a large part of the year while attending a boarding school or college.

# 9 FAM 41.21 N5.4  Immediate Family of Foreign Official Who Has Requested Status of Permanent Resident

*(CT:VISA-1437;   06-02-2010)*

An alien who is a member of the immediate family of a principal alien classifiable as A-1, A-2, G-1, G-2, G-3, or G-4 may receive that classification even when the principal alien has requested permission to obtain or retain the status of permanent resident under INA 247(b) (8 U.S.C. 1257(b)).  The principal alien must have waived his and/or her rights, privileges, exemptions, and immunities.

# 9 FAM 41.21 N6  A-3, G-5, OR NATO-7 CLASSIFICATION

## 9 FAM 41.21 N6.1  Aliens Entitled to A-3, G-5, or NATO-7 Classification

*(CT:VISA-1663;   07-06-2011)*

a. An alien who is the attendant, servant, or personal employee of an alien classified A-1 or A-2, G-1 through G-4, or NATO-1 through NATO-6, is entitled to the appropriate A-3, G-5, or NATO-7 classification.  Such aliens are required to demonstrate that they are entitled to an A-3, G-5, or NATO-7 nonimmigrant classification (e.g., letter of reference from a former employer, evidence of previous employment in that sector, etc.).  You must, therefore, establish the official status of the employer and the intent of both parties to enter into (or remain in) an employer-employee relationship.  In cases where the domestic employee either is renewing an A-3, G-5, or NATO-7 visa or is joining an employer who has already taken up his or her assignment in the United States, post must check Protocol's records in The Office of Foreign Mission's (OFM) Management Information System (TOMIS) through the Consular Consolidated Database (CCD) "Cross Applications" menu to verify an employer's current official status.  Keep in mind that if a domestic employee is accompanying the employer to a new diplomatic assignment in the United States, the diplomatic employer will not be registered with Protocol until after he or she enters the United States and is notified to Protocol by his or her diplomatic mission or international organization.  In these instances, the employer likely will not appear in the TOMIS database (unless the employer previously was posted in the United States on a different assignment).  Diplomats and officials do not/not require pre-notification to Protocol and may not be registered with Protocol until they

actually enter the United States and take up their positions.  If post has any question regarding an employer's status (e.g., name does not appear in TOMIS although the employer has already entered the United States for his or her posting; appears to have been accredited for an unusual length of time; or shows as terminated), refer the case to Advisory Opinions (CA/VO/L/A).  Additionally, if a particular A-3, G-5, or NATO-7 application raises fraud concerns, refer the case to the Department for further verification.

**NOTE:**  Protocol requires the employer's foreign mission or international organization to pre-notify Protocol of the intention to sponsor the alien as a domestic or personal employee.  9 FAM 41.22 N4 provides adjudication of an A-3 or G-5 application may not take place until TOMIS contains a record of the pre-notification.  These requirements for pre-notification and a TOMIS record do not apply in instances where the employee is on a temporary assignment of less than 90 days.  In such cases, please see annotation instructions in 9 FAM 41.113 PN12.2.

b. Consular officers are reminded that A, G, and NATO visa applicants meet the requirements of INA 214(b) (8 U.S.C. 1184(b)) by establishing entitlement to such nonimmigrant status.  They do not need to demonstrate that they:

   (1)   Are not intending immigrants;

   (2)   Have a residence abroad they do not intend to abandon; or

   (3)   Have compelling ties outside the United States.

c. The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (WWTVPRA) (Public Law 110-457) requires you to ensure that an individual applying for an A-3, G-5, or NATO-7 visa is made aware of his or her legal rights under Federal immigration, labor, and employment laws.  This includes information on the illegality of slavery, peonage, trafficking in persons, sexual assault, extortion, blackmail, and worker exploitation in the United States.  At the time of the visa interview, you must confirm that a pamphlet described in 9 FAM 41.21 N6.5-1 has been received, read, and understood by the applicant.  You are also required to review the contents of the mandatory employment contract, as described in 9 FAM 41.21 N6.2, with the applicant.

# 9 FAM 41.21 N6.2  Terms and Conditions of Employment; Mandatory Employment Contracts

*(CT:VISA-1663;   07-06-2011)*

a. You must be satisfied that the wage to be received by the A-3, G-5, or NATO-7 applicant is a fair wage comparable to that offered in the area of employment and sufficient to overcome INA 212(a)(4) (8 U.S.C.

1182(a)(4)).  To insure that the applicant will receive a fair wage, applications for such visas must include an employment contract signed by the employer and the employee.  The contract must include the following elements:

(1)   An agreement by the employer to abide by all Federal, State, and local laws in the United States;

(2)   A guarantee the employee will be compensated at the Federal or State minimum or prevailing wage, whichever is greater.  Department of Labor (DOL) maintains an Alien Labor Certification/Occupational Employment Survey (ALC-OES) database that breaks down prevailing wage statistics by occupation and metropolitan area.  This information is available on the Web on the Department of Labor's Online Wage Library & Data Center.

NOTE:  You must be satisfied that if any deduction is taken for meals, it must be documented and be reasonable, as defined in this note:  On March 22, 2011, the Department defined reasonable deductions:  Housing provided to A-3 and G-5 workers is for the benefit of the employer and thus it is not permissible to withhold from wages any amount for lodging.  Employers of A-3 or G-5 visa holders may reasonably withhold from the wages of domestic workers no more than 20 percent of wages for a minimum of three daily meals.  The Department does not allow deductions from wages for any other expenses, such as the provision of medical care, medical insurance, or travel.  All contracts presented by A-3 and G-5 applicants should adhere to these standards for reasonable deductions;

(3)   Information on the frequency and form of payment, work duties, weekly work hours, holidays, sick days, and vacation days;

(4)   A statement by the employee that he or she will not accept any other employment while working for the employer;

(5)   A statement by the employer that he or she will not withhold the passport, employment contract, or other personal property of the employee; and

(6)   A statement indicating that both parties understand that the employee cannot be required to remain on the premises after working hours without compensation.

b.  You may encounter applications where the applicant does not submit a contract, the contract does not guarantee a fair wage or working conditions, or you have evidence that the employer will not comply with the conditions specified in the contract.  In such cases, you should refuse the application under either INA 214(b) (8 U.S.C. 1184(b)), because the applicant has not shown entitlement to A, G, or NATO nonimmigrant

status, or under INA 221(g) (8 U.S.C. 1201(g)), because the alien has failed to submit a required document.  If the agreed wage falls below the minimum or prevailing wage because of deductions for food and lodging by the employer, and you conclude that the remaining wage available to the employee is insufficient to provide a reasonable incentive to continue in the A-3, G-5, or NATO-7 employment, you should also refuse the application pursuant to INA 214(b) (8 U.S.C. 1184(b)).  You may refuse visas for A-3, G-5, or NATO-7 applicants under any appropriate provision of law.

## 9 FAM 41.21 N6.3  Domestics and Personal Employees of Aliens in Permanent Resident Status Not Eligible for A-3, G-5, or NATO-7 Classification

*(CT:VISA-1437;   06-02-2010)*

An alien in A, G, or NATO status, who acquires or retains permanent resident status as provided in INA 247(b) (8 U.S.C. 1257(b)) or in 22 CFR 40.203 may not have in his or her employ a personal employee in the A-3, G-5, or NATO-7 classification.  The employee of such an alien must qualify for and obtain an H-2B nonimmigrant visa (NIV) or an immigrant visa (IV) for the purpose of working for the employer.

## 9 FAM 41.21 N6.4  Endorsing A-3, G-5, and NATO-7 Visas

*(CT:VISA-1100;   11-04-2008)*

Posts are to endorse A-3, G-5, and NATO-7 visas issued to attendants, servants, and personal employees of aliens classified A-1, A-2, G-1 through G-4, or NATO-1 through NATO-6.  The notation is to be placed in the annotation field of the MRV and is to contain the name of the principal alien and his place of employment.  For example:

   John Doe, Embassy of Z,

   Washington, DC

## 9 FAM 41.21 N6.5  Information Pamphlet on Legal Rights of A-3, G-5, NATO-7, H, J, and Domestic Employees

*(CT:VISA-1690;   09-15-2011)*

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (WWTVPRA) requires the Secretary of State, in consultation with the

Secretary of Homeland Security, the Attorney General, and the Secretary of Labor, to hand out an information pamphlet on legal rights and available resources to aliens applying for A-3, G-5, H, or J visas, as well as *to any personal or domestic servant* (such as B-1 domestic *or* NATO-7) who is accompanying or following to join an employer.

## 9 FAM 41.21 N6.5-1  Contents of Information Pamphlet

*(CT:VISA-1690;   09-15-2011)*

a. The contents of the information pamphlet, *"For Certain Employment or Education-Based Nonimmigrants,"* include a discussion of procedural issues, legal rights, and available legal resources concerning items such as:

(1) The nonimmigrant visa (NIV) application *process*, including information about the portability of employment;

(2) The legal rights of employment- or education-based NIV holders under Federal immigration, labor, and employment laws;

(3) The illegality of slavery, peonage, trafficking in persons, sexual assault, extortion, blackmail, and worker exploitation in the United States;

(4) The legal rights of immigrant victims of trafficking in persons and worker exploitation, including:

   (a) The right of access to immigrant and labor rights groups;

   (b) The right to seek redress in United States courts;

   (c) The right to report abuse without retaliation;

   (d) The right of the nonimmigrant not to relinquish possession of his or her passport to his or her employer;

   (e) The requirement *for* an employment contract between the employer and the nonimmigrant; and

   (f) An explanation of the rights and protections included in the mandatory employment contract.

(5) Information about nongovernmental organizations that provide services for victims of trafficking in persons and worker exploitation, including:

   (a) Anti-trafficking in persons telephone hotlines operated by the Federal Government;

   (b) The Operation Rescue and Restore hotline; and

   (c) A general description of the types of victims' services available for individuals subject to trafficking in persons or

      worker exploitation.

b. The pamphlet *has been* translated into certain foreign languages, based on the languages spoken by the greatest concentration of employment- and education-based NIV applicants.  *The* pamphlet *is* posted on the Department of *State's* travel *information* Web site and must be posted, in English and any relevant local language that the pamphlet has been translated into, on the Web site of every consular post.

# 9 FAM 41.21 N6.5-2  Consular Officer Responsibilities *Under the William Wilberforce Trafficking Victims Protection Act (WWTVPRA)*

*(CT:VISA-1690;   09-15-2011)*

a. The WWTVPRA requires you *to ensure that aliens* applying for A-3, G-5, H, or J visas or a personal or domestic servant accompanying or following to join an employer (such as B-1 domestic or NATO-7), are made aware of their legal rights under Federal immigration, labor, and employment laws.  This includes information on the illegality of slavery, peonage, trafficking in persons, sexual assault, extortion, blackmail, and worker exploitation in the United States.  At the time of the NIV interview, you must confirm that a pamphlet prepared by the Department detailing this information has been received, read, and understood by the applicant.  Consular officers must add a mandatory case note in the NIV system stating that the pamphlet was provided and that the applicant indicated s/he understood its contents.

   (1)  *Consular officers must* confirm that the alien has received, read, and understood the contents of the information pamphlet, and to offer to answer any questions the alien may have regarding the contents of the pamphlet; *or*

   (2)  If the pamphlet was not received, read, or understood, to provide a copy to the applicant and orally disclose *its contents* in a language that the *applicant* understands, and offer to answer any questions that the *applicant* may have regarding information contained in the pamphlet, as well as information described below regarding legal rights, U.S. law, and victim services.  Such an oral disclosure should include:

      (a)  The legal rights of employment-based nonimmigrants under Federal immigration, labor, and employment laws;

      (b)  The illegality of slavery, peonage, trafficking in persons, sexual assault, extortion, blackmail, and worker exploitation in the United States;

      (c)  The legal rights of *nonimmigrant* victims of trafficking in

    persons, worker exploitation, and other related crimes, including:

    (i) The right of access to immigrant and labor rights groups;

    (ii) The right to seek redress in United States courts; and

    (iii) The right to report abuse without retaliation; and

  (d) The availability of services for victims of human trafficking and worker exploitation in the United States, including victim services complaint hotlines.

b. All applicants for A-3, G-5, or NATO-7 *visas* must be interviewed, regardless of whether the applicant has been issued a previous visa in the same classification to work for the same employer. The interview of an A-3, G-5, or NATO-7 applicant must be conducted outside the presence of the employer or recruitment agent.

# 9 FAM 41.21 N6.6  Suspension of Processing of A-3 and G-5 Applications from Certain Foreign Missions and International Organizations

*(CT:VISA-1237;   07-01-2009)*

a. The Secretary of State shall suspend, for such period as the Secretary determines necessary, the issuance of A-3 visas or G-5 visas to applicants seeking to work for officials of a diplomatic mission or an international organization, if the Secretary determines that there is credible evidence that one or more employees of such mission or international organization have abused or exploited one or more nonimmigrants holding an A-3 visa or a G-5 visa, and that the diplomatic mission or international organization tolerated such actions.

b. The Secretary may suspend the application of the limitation under paragraph (a) if the Secretary determines and reports to the appropriate Congressional committees that a mechanism is in place to ensure that such abuse or exploitation does not reoccur with respect to any alien employed by an employee of such mission or institution.

c. All visa processing posts will be advised when the Secretary has determined that A-3 or G-5 visa processing should be suspended for a specific diplomatic mission or international organization.

# 9 FAM 41.21 N7  DESIGNATED PORTS OF ENTRY (POE) FOR CERTAIN DIPLOMATIC AND INTERNATIONAL ORGANIZATION PERSONNEL

*(CT:VISA-907;   10-11-2007)*

See Visa Reciprocity and Country Documents Finder under country concerned.

## 9 FAM 41.21 N8  REQUIRING SECURITY ADVISORY OPINION (SAO) IN CERTAIN CASES

*(CT:VISA-907;   10-11-2007)*

See Visa Reciprocity and Country Documents Finder for country specific guidance.

## 9 FAM 41.21 N9  VALIDITY OF A-3 AND G-5 VISAS

*(CT:VISA-1237;   07-01-2009)*

See 9 FAM 41.112 N2.6.

## 9 FAM 41.21 N10  CLASSIFYING SPOUSE AND CHILD OF A, G, OR NATO ALIEN

*(TL:VISA-320;   09-27-2001)*

See 9 FAM 41.11 N4 and 9 FAM 41.11 N5.